HENDERSON COUNTY AND LINCOLN K. ANDREWS v. FRANK OSTEEN (NOW DECEASED), HARLEY OSTEEN (IN HIS CAPACITY AS ADMINISTRATOR OF THE ESTATE OF FRANK OSTEEN), AND ELLIE O. CHEATWOOD, UFALA O. STEPP, HAZEL O. STEVENSON, BLANCHE O. KING, HARLEY OSTEEN, SYLVENE O. SPICKERMAN, GRETA O. ALLEN, JEAN O. HOLDEN, MITCHELL M. OSTEEN, CARL M. OSTEEN, MARTHA SUE O. BROWN, JAMES D. OSTEEN AND THELMA O. TAYLOR AS ALL THE HEIRS AT LAW OF FRANK OSTEEN, DECEASED

No. 61

(Filed 13 June 1977)

1. **Execution § 15; Taxation § 44— tax sale — attack on sale by motion in the cause — no bar of statute of limitations**

Defendants who properly filed a motion in the cause seeking to set aside a tax sale of property more than four years after the execution sale were not barred by G.S. 1-52(10) providing that the bringing of "an action . . . for the recovery of real property sold for nonpayment of taxes" is barred if not brought within three years, since the present case was not "an action" nor was it for "the recovery of real property," but was instead a motion in the cause for the removal of a cloud on the movant's title; nor were defendants barred by the one year limitation in G.S. 105-393 (now G.S. 105-377), since the motion in the cause was not an "action or proceeding . . . brought to

contest the validity" of a title to real property, and it was not a "motion to reopen or set aside the judgment" pursuant to which the tax sale in question was held, but was instead an attack upon the sale itself.

2. **Execution § 3— tax judgment — execution after death of taxpayer not barred**

Foreclosure of a tax lien by judgment and execution, pursuant to G.S. 105-392 (now G.S. 105-375), is an exception to the general rule that land may not be sold under an execution issued after the death of the judgment debtor.

3. **Taxation § 40— execution upon tax judgment — death of taxpayer — notice required**

When a county has purchased a tax lien at a valid sale thereof and, after notice to the listing taxpayer, has docketed a judgment and issued execution in accordance with the procedures prescribed in G.S. 105-392 (now G.S. 105-375), the county may not, after the death of the taxpayer, without mailing notice to his last known address by registered or certified mail, as specified in the said statute, sell his land, at a sale otherwise held in conformity to the statute, and convey a valid title to the purchaser, since the provision of G.S. 105-397.1 (now G.S. 105-394) declaring the failure so to mail the prescribed notice to the listing taxpayer a mere irregularity, not affecting the validity of the deed, is unconstitutional. Article I, § 19 of the Constitution of North Carolina.

ON *certiorari to* the Court of Appeals to review its decision, reported in 28 N.C. App. 542, 221 S.E. 2d 907, reversing judgment for defendants entered by *Friday, J.,* at the 9 April 1975 Session of HENDERSON, docketed and argued as Case No. 14 at the Fall Term 1976.

The original defendant, Frank Osteen, died 17 July 1970. The defendant Harley Osteen is the administrator of his estate. The remaining defendants are his heirs at law. The plaintiff, Lincoln K. Andrews, is the grantee of the land here in question by a tax deed from Henderson County.

A judgment having been entered in favor of Henderson County against Frank Osteen for ad valorem taxes for the year 1967, assessed against him on account of his ownership of the land in question, and the said land having been sold pursuant to an execution issued upon the said judgment and having been conveyed, pursuant to such sale, to Lincoln K. Andrews, the administrator and heirs of Frank Osteen filed a motion in the cause praying that the sale of the said property by the county to Andrews be set aside. Andrews filed a motion for summary judgment in his favor, contending that the motion by the ad-

ministrator and heirs of Frank Osteen does not state a claim upon which relief can be granted, alleging, among other things, that their motion is barred by the one year statute of limitations and the three year statute of limitations set forth in G.S. 105-177 and G.S. 1-52(10), respectively.

The matter came on to be heard before Judge Friday, without a jury. He found the following facts, to which findings no exception was taken:

"1. That judgment was docketed in favor of Henderson County for nonpayment of real property taxes on October 1, 1969 covering Lots 67 through 75 and one unnumbered lot in Hillside Park Subdivision as recorded in Plat Book 1, page 162, Henderson County Registry, the property of Frank Osteen.

"2. That Frank Osteen died on July 17, 1970 in Henderson County, North Carolina.

"3. That execution on the docketed judgment in favor of Henderson County was issued on the 22nd day of July, 1970, five (5) days after the date of death of Frank Osteen.

"4. That Harley Osteen qualified as Administrator of the Estate of Frank Osteen on the 27th day of July, 1970.

"5. That the property was sold at Sheriff's sale on August 26, 1970 to Lincoln K. Andrews, the last and highest bidder, for the sum of $21.42.

"6. That the sale was confirmed and the property was deeded to Lincoln K. Andrews by deed dated the 15th day of September, 1970 and recorded in Deed Book 478 at page 37, Henderson County Registry.

"7. That at the time the property was sold to Lincoln K. Andrews for $21.42, the property had a value of approximately $12,000.00.

"8. That no notice of the execution sale was given to the Administrator or the heirs at law of Frank Osteen."

Upon these findings Judge Friday, being of the opinion that the decision in *Flynn v. Rumley*, 212 N.C. 25, 192 S.E. 868 (1937) is controlling, entered judgment setting aside and cancelling the said sale of the property, directing the Adminis-

·trator of the Estate of Frank Osteen to pay to Lincoln K. Andrews the taxes levied by Henderson County upon the said· property for the years 1967 through 1974, plus interest and cost, and ordering Lincoln K. Andrews to execute a quitclaim ·deed for the said property to the said Administrator.

From this judgment Lincoln K. Andrews appealed to the Court of Appeals assigning as error: (1) The failure of ·the trial judge to find as a matter of law that the motion in the cause filed by the Administrator and heirs of Frank Osteen failed to state a claim upon which relief could be granted; (2) the denial of the motion by Andrews for summary judgment in his favor; and (3) the signing of the order entered by Judge Friday.

At the hearing before Judge Friday, the Administrator, who is one of the heirs of Frank Osteen, and James Donno Osteen, another of the heirs, testified, each saying that he learned of the sale of the land to Andrews in the latter part of September 1970.

The Court of Appeals reversed and ordered the matter remanded to the Superior Court for the entry of a judgment dismissing with prejudice the motion in the cause filed by the Administrator and heirs of Frank Osteen.

*W. Harley Stepp, Jr., for Henderson County.*

*Prince, Youngblood & Massagee by James E. Creekman for Lincoln K. Andrews.*

*James C. Coleman for Harley Osteen.*

*Roberts, Caldwell and Planer, P.A. by Joseph B. Roberts III, Amicus Curiae.*

LAKE, Justice.

The procedure for the collection of ad valorem taxes by counties and municipalities is prescribed in the Machinery Act of 1939, as amended from time to time. G.S. Chapter 105, Subchapter II, G.S. 105-271 et seq. Since the tax sale of the Osteen land here involved occurred in 1970, we turn our attention to the statutes then in effect, using the then appropriate section numbers followed in parentheses by the section numbers of the comparable provisions now in effect.

The county tax collector is directed to report to the governing body of the county in April of each year a list of all taxpayers who have not paid ad valorem taxes which become due in the previous calendar year and which are liens on real property. Thereupon, the governing body causes to be published, or posted, a notice of public sale of the said liens, which sale is held on the first Monday in May, or the first Monday of any of the four succeeding months. The advertisement of such sale shows the name of each delinquent taxpayer, a brief description of the land listed for taxes by him and the principal amount of the taxes due thereon. G.S. 105-387 (now G.S. 105-369). Usually, the taxing unit, itself, purchases the tax liens at such sale.

Two methods for the foreclosure of a tax lien so purchased are provided by the statute: Foreclosure by action, G.S. 105-391 (now G.S. 105-374); and an alternate method, now called Foreclosure in rem, G.S. 105-392 (now G.S. 105-375).

The first, which is the only procedure available to private purchasers of tax liens and which may not be brought less than six months after the above mentioned sale of the tax lien, is an action in the Superior Court in the nature of an action to foreclose a mortgage. The listing taxpayer, his or her spouse, the current owner of the property, other taxing units having tax liens, other lienholders of record, and all other persons who would be entitled to be made parties to a court action to foreclose a mortgage on the property must be made parties and served with process. By its judgment, the court orders the sale of the property by a commissioner appointed in the judgment. The property is sold in fee simple, free and clear of all interests, rights, claims and liens, except liens for certain taxes and assessments. The commissioner reports the sale to the court, giving full particulars thereof and, after the expiration of the time allowed for an upset bid, may apply to the court for confirmation of the sale. Upon such confirmation, the commissioner conveys the property by deed to the purchaser. G.S. 105-391 (now G.S. 105-374). This procedure is not involved in the present appeal.

The second procedure, originally designated, "Alternative method of foreclosure," since 1971 designated, "In rem method of foreclosure," is set forth in detail in G.S. 105-392 (now G.S. 105-375). This is the procedure the use of which gave rise to the present appeal. The procedure so prescribed by the

statute in effect in 1970, insofar as pertinent to this appeal, was:

"(a) * * * [T]he governing body of any taxing unit may order the collecting official to file, not less than six months nor more than two years * * * following the collector's sale of [tax liens] with the Clerk of Superior Court a certificate showing the name of the taxpayer listing the real estate on which such taxes are a lien, together with the amount of taxes, interest, penalties and costs which are a lien thereon, the year for which such taxes are due, and a description of such real property sufficient to permit its identification by parol testimony. The Clerk of Superior Court shall enter said certificate in a special book entitled 'Tax Judgment Docket * * * ' and shall index the same therein in the name of the listing taxpayer * * * . Immediately upon said docketing and indexing, said taxes * * * shall constitute a valid judgment against said property * * * which said judgment * * * shall have the same force and effect as a duly rendered judgment of the Superior Court directing sale of said property for the satisfaction of the tax lien * * * .

"The collecting official filing said certificate shall, at least two weeks prior to the docketing of said judgment, send a registered or certified letter or by letter sent by certified mail to the listing taxpayer, at his last known address, stating that the judgment will be docketed and that execution will issue thereon in the manner provided by law. However, receipt of said letter by said listing taxpayer, or receipt of actual notice of the proceeding by said taxpayer or any other interested person, shall not be required for the validity or priority of said judgment or for the validity or priority, as hereinafter provided, or the title acquired by the purchaser at the execution sale. It is hereby expressly declared to be the intention of this section that proceedings brought under it shall be strictly in rem. It is further declared to be the intention of the section to provide a simple and inexpensive method of enforcing payment of taxes necessarily levied, to the knowledge of all, for the requirements of local governments in this State; and to recognize, in authorizing such proceeding, that all those owning interests in real property know, or should know, without special notice thereof, that such property

may be seized and sold for failure to pay such lawful taxes. * * *

"(b) *Motion to Set Aside.*—At any time prior to issue of execution, any person having an interest in said property may appear and move to set aside said judgment on the ground that the tax has been paid or that the tax lien on which said judgment is based is invalid.

"(c) *Issue of Execution.* — At any time after six months and before two years from the indexing of said judgment, execution shall be issued at the request of the governing body of the taxing unit, in the same manner as executions are issued upon other judgments of the Superior Court, and said property shall be sold by the sheriff in the same manner as other property is sold under execution: Provided, that no debtor's exemption shall be allowed; and provided, further, that in lieu of any personal service of notice on the owner of said property, registered or certified mail notice shall be mailed to the listing taxpayer, at his last known address, at least one week prior to the day fixed for said sale. The purchaser at said sale shall acquire title to said property in fee simple, free and clear of all claims, rights, interest and liens except the lien of other taxes and assessments not paid from the purchase price and not included in the judgment * * * .

*          *          *

"(h) *Procedure if Section Declared Unconstitutional.* —If any provisions of this section are declared invalid or unconstitutional by a court of competent jurisdiction, all taxing units which have proceeded under this section shall have one year from the date of the filing of such opinion * * * in which to institute foreclosure actions under § 105-391 for all taxes included in judgments taken under this section and for subsequent taxes due or which, but for purchase of such property by the taxing unit, would have become due; and such opinion shall not have the effect of invalidating the tax lien or disturbing the priority thereof."

In G.S. 105-393 (now G.S. 105-377) a statute of limitations, relied upon by the purchaser of the property in the present case, is set forth in the following terms:

"*Time for contesting validity of tax foreclosure title.*— No action or proceeding shall be brought to contest the

Henderson County v. Osteen

validity of any title to real property acquired, by a taxing unit or by a private purchaser, in any tax foreclosure action or proceeding authorized by this subchapter * * * nor shall any motion to reopen or set aside the judgment in any such tax foreclosure action or proceeding be entertained, after one year from the date on which the deed is recorded * * * ."

Other provisions in the Machinery Act in effect in 1970 and pertinent to this appeal include the following:

G.S. 105-301 (now G.S. 105-302): "(a) Except as hereinafter specified, real property shall be listed in the name of its owner; and it shall be the duty of the owner to list the same. * * * ."

G.S. 105-377 (now G.S. 105-348): "All persons who have or may acquire any interest in any property which may be or may become subject to a lien for taxes are hereby charged with notice that such property is or should be listed for taxation, that taxes are or may become a lien thereon, and that if taxes are not paid such proceedings may be taken against said property as are allowed by law. Such notice shall be conclusively presumed, whether such persons have actual notice or not."

G.S. 105-397.1 (now G.S. 105-394): *"Irregularities Immaterial.*—No irregularities in making assessments or in making the returns thereof in the equalization of property as provided by law, or in any other proceeding or requirement, shall invalidate the sale of tax liens on real estate or sale of real estate in tax foreclosure proceedings, nor in any manner invalidate the tax levied on any property or charged against any person. The following defects, omissions, and circumstances occurring in the assessment of any property for taxation, or in the levy of taxes, or elsewhere in the course of the proceedings, shall be deemed to be irregularities within the meaning of this subsection; the failure of the assessors to take or subscribe to an oath or attach an oath to an assessment roll; the omission of a dollar mark or other designation descriptive of the value of figures used to denote an amount assessed, levied, or charged against any property or the valuation of any property upon any record; *the failure to make or .serve any notice mentioned in this chapter;* the failure or neglect of

the collector to offer any tax lien or real estate for sale at the time mentioned in the advertisement or notice of such sale; failure of the collector to adjourn the sale from day to day, or any irregularity or informality in such adjournment; any irregularity or informality in the order or manner in which tax liens or real estate may be offered for sale; the failure to assess any property for taxes or to levy any tax within the time prescribed by law; any irregularity, informality of omission in any such assessment or levy; any defect in the description, upon any assessment book, tax list, sales book, or other record, of real or personal property, assessed for taxation, or upon which any taxes are levied, or which may be sold for taxes, provided such description be sufficiently definite to enable the collector, or any person interested, to determine what property is meant or intended by the description, and in such cases a defective or indefinite description, on any book, list, or record, or in any notice or advertisement, may be made definite by the collector at any time by correcting such book, list or record, or may be made definite by using a correct description in any tax foreclosure proceeding authorized by this subchapter, and any such correction shall have the same force and effect as if said description had been correct on the tax list; any other irregularity, informality, or omission or neglect on the part of any person or in any proceedings, whether mentioned in this subsection or not; the neglect or omission to tax or assess for taxation any personal property; the overtaxation of persons or property liable to be taxed." (Emphasis added.)

We note that the statute last above quoted was originally a subparagraph in the section entitled, "Sales of Tax Liens on Real Property for Failure to Pay Taxes." G.S. 105-387(j). The Legislature of 1965 took this provision out of that section and, with minor modifications not material to this appeal, made it a separate section in Article 28 (now Article 30) of Chapter 105 of the General Statutes. This would indicate a legislative intent to free this provision from any possible limitation of it to procedures incident to the sale of tax liens so as to extend it to procedures for foreclosure thereof as well.

While not directly pertinent to the decision of this appeal, we note that the 1973 Legislature (Session Laws of 1973), Chapter 681, §§ 1 and 2) amended the procedure governing the

"alternative" or "in rem" method of foreclosing tax liens so as to require that the notice by the tax collector to the listing tax-payer of the collector's intent to docket the judgment upon which execution would thereafter issue be sent in a registered or cer-tified letter "Return Receipt Requested," that such notice be also sent to all lienholders of record who have filed in the office of the collector a request for such notification and that it deleted the former provision stating, "Receipt of the letter by the list-ing taxpayer, or receipt of actual notice of the proceeding by the taxpayer or other interested persons, shall not be required for the validity or priority of the judgment or for the validity of the title acquired by the purchaser at the execution sale."

We turn now to the task of seeking a pathway through this legislative maze to the answer to the question presented by this appeal.

[1] The movants are not barred from the relief which they now seek by the statutes of limitations pleaded by the purchaser at the tax foreclosure sale. It is expressly provided in G.S. 105-392 (now G.S. 105-375) that the docketed judgment has the same force and effect as a duly rendered judgment of the Su-perior Court. In *Finance Co. v. Trust Co.*, 213 N.C. 369, 196 S.E. 340 (1938), speaking through Justice Barnhill, later Chief Justice, this Court said:

"The Court from which the execution issued may, for sufficient cause shown, recall or set aside an execution or a sale made thereunder and prevent further proceedings. This is properly done by a motion in the cause and not by an independent action."

The question here presented was properly brought before the Superior Court in a motion in the cause, not an independent action.

G.S. 1-52(10), relied upon by the purchaser, provides that within three years "an action * * * for the recovery of real property sold for the nonpayment of taxes" is barred. The present case is not "an action," nor is it for "the recovery of real property," but is a motion in the cause for the removal of a cloud on the movant's title. Thus, G.S. 1-52(10) does not apply. *McNair v. Boyd*, 163 N.C. 478, 79 S.E. 966 (1913); *Cauley v. Sutton*, 150 N.C. 327, 64 S.E. 3 (1909); *Beck v. Meroney*, 135 N.C. 532, 47 S.E. 613 (1904).

Likewise, the one year limitation in G.S. 105-393 (now G.S. 105-377), above quoted, has no application. The motion in the cause is not an "action or proceeding * * * *brought* to contest the validity" of a title to real property, and it is not a "motion to reopen or set aside the judgment" pursuant to which the tax sale here in question was held. The movants do not attack the judgment but the sale held under it.

The amended motion in the cause filed in this proceeding by the Administrator and heirs of Frank Osteen states:

"That pursuant to old NCGS 105-392 (now NSGS 105-375), Elizabeth B. King, Tax Collector of Henderson County mailed to Frank Osteen by registered mail, return receipt requested a notice informing him that a tax judgment for nonpayment of real property taxes for the year 1967 would be docketed if the taxes were not promptly paid. The letter was received by Frank Osteen on September 15, 1969 and judgment was docketed in favor of Henderson County on October 1, 1969 in conformity with the statute."

Thus, it is conceded by the movants that the statutory procedure for the sale of the tax lien and for the docketing of the judgment was followed. Frank Osteen lived ten months after receiving this letter of notification from the tax collector. The evidence is that his health was bad but nothing indicates that he was mentally incompetent to understand the letter so received by him or to take appropriate action to pay the taxes due. The record indicates no effort by him, or on his behalf, during this ten month interval, to exercise his right under G.S. 105-392(b) (now G.S. 105-375(f)) to move to set aside the judgment on the ground that the 1967 taxes had in fact been paid or that the tax lien on which the judgment is based was invalid.

The execution, pursuant to which the land was sold, was issued within the time limits prescribed by the Statute. No further notice of the issuance of the execution than that contained in the registered letter received by Mr. Osteen ten months prior to his death is required by the statute. The execution was actually issued five days after the death of Frank Osteen. Thus, at the time it was issued, his heirs, the movants in the present proceeding, were the owners of the land, legal title descending to them immediately upon his death, subject to the power of the Administrator of his Estate to subject it to the

payment of his debts. Nothing in the record indicates that the governing body of the county, or its tax collector, was then aware of the death of Mr. Osteen.

In his affidavit, filed in support of his motion, the Administrator of the Estate of Frank Osteen says that when he qualified as administrator, the Clerk did not inform him that the judgment for taxes had been docketed or that execution had been issued thereon. The statute imposes no duty upon the Clerk to bring such matters to the attention of an applicant for letters of administration and to require him to do so would impose a well nigh impossible burden upon him. It may well be that the Clerk, or his deputy who handled the granting of the letters of administration five days after the execution was issued, then had no personal knowledge or recollection of the docketing of the judgment ten months earlier or the issuance of the execution five days before the letters of administration were sought. Nothing in the record indicates the contrary, nor is there anything in the record to indicate that the Clerk, if he knew of these matters, had any reason to suppose that the Administrator was unaware of them.

In *Flynn v. Rumley, supra,* this Court, speaking through Justice George Connor, affirmed the lower court's refusal to issue a writ of mandamus directing a sheriff to levy upon and sell land of a judgment debtor under execution issued after the death of such debtor, saying:

"The execution, having been issued after the death of the judgment debtor, was not warranted by law. A sale of the land made under the execution would be void."

The reason for this rule is thus stated in *Tuck v. Walker,* 106 N.C. 285, 11 S.E. 183 (1890), by Justice Avery:

"It is well settled that, though there may be unsatisfied judgments constituting a lien upon the land of a debtor, when he dies the judgment creditor is not allowed to sell it under execution, but the administration of the whole estate is placed in the hands of the personal representative, who is required first to apply the personal assets in payment of the debts, and if they prove insufficient, then the statute prescribes how the land may be subjected and sold so as to avoid a needless sacrifice by selling for

cash, or a greater quantity at all than is required to discharge the indebtedness."

In *Atkinson v. Ricks,* 140 N.C. 418, 53 S.E. 230 (1906), the plaintiff brought an action in the justice's court to recover a debt and caused land of the defendant to be attached. He recovered judgment. Pending the defendant's appeal to the Superior Court, the defendant died. The Superior Court rendered judgment against the executor and the plaintiff filed a motion in the cause for the appointment of a commissioner to sell the land which had been so attached for the satisfaction of the judgment. This Court held there was error in granting the plaintiff's motion, saying the lien of the attachment levied in the lifetime of the debtor could not be enforced in that way and observing:

> "The intention of the Legislature is that the assets of a decedent shall be administered, as far as may be done, in one proceeding, under proper safeguards, for the benefit of all the creditors, and we must effectuate this intention when it does not conflict with any other special provision of the law in favor of a particular creditor, who has legitimately secured priority."

In *Moore v. Jones,* 226 N.C. 149, 36 S.E. 2d 920 (1946), the administrator of a decedent's estate sought direction as to the order of payment of claims. Speaking through Justice Barnhill, later Chief Justice, this Court said:

> "A judgment creditor may not issue execution for the enforcement of his lien after the death of the judgment debtor. This avenue of relief is closed and he is required to look to the personal representative whose duty it is to administer the whole estate. [Citations omitted.] But this does not mean that when the personal representative finds it necessary to seek a conversion of the land to make assets either he or the Court may disregard the rights of lienors."

In the present case, the Court of Appeals held that the tax lien foreclosure pursuant to G.S. 105-392 (now G.S. 105-375) being, as that statute declares, a proceeding "strictly in rem," whereas the judgment in *Flynn v. Rumley, supra,* was a judgment in personam, that case is not controlling in the present matter, as the trial judge deemed it to be, and, therefore, "given the unique nature of the judgment the death of the taxpayer before execution of the judgment is immaterial."

We do not deem it necessary to go so far as to hold that the rule of *Flynn v. Rumley, supra,* has no application to any judgment in rem. The purpose of the rule is to protect the creditors and the distributees and heirs of the deceased from waste of his assets. For that purpose, the Probate Court takes control of the collection, application and distribution of his properties. When, in this process of administration of the estate, the administrator sells land to make assets with which to pay debts, he first applies the proceeds thereof to the payment of liens upon the land in the order of their priority. *Moore v. Jones, supra.* Land subject to the lien of a judgment in rem for an amount less than its value has the same importance to other creditors and to the heirs of the deceased, against whom the judgment was taken, as does the land subject to the lien of a judgment in personam against him.

In *Guilford County v. Estates Administration, Inc.,* 213 N.C. 763, 197 S.E. 535 (1938), however, there was an action to foreclose a tax lien pursuant to G.S. 105-391 (now G.S. 105-374), the listing taxpayer having died after the tax became due but before the tax lien was sold. The administrator, heirs and judgment creditors of the deceased were made parties defendant to the foreclosure action and contended that, by reason of the death of the taxpayer, the county could not maintain the action to foreclose but must file its claim with the administrator. This Court held that the county could maintain such action, saying, through Justice Winborne, later Chief Justice:

"The holder [of the tax lien] is entitled to a judgment for the sale of such real estate for the satisfaction of whatever sum there may be due upon such certificate. * * * The county [the purchaser of the tax lien] has the right of foreclosure, and that right is the only right the county has to enforce the lien of the certificate of sale, for the collection of the tax. The county may pursue this course at its election. * * * If the personal estate be insufficient to pay debts of the estate, the administrator, by appropriate proceeding, may resort to the sale of the land, burdened, however, with such items, statutory or otherwise, as exist at the time. But this right does not prevent the holder of the tax sale certificate from foreclosing in civil action in the nature of an action to foreclose a mortgage during the pendency of the administration."

[2]   We perceive no basis for a distinction between the right of the county, holding a valid tax lien certificate, to proceed, pending the administration of the deceased taxpayer's estate, to foreclose such lien by an action under G.S. 105-391 (now G.S. 105-374) and its right to proceed to the same result under the alternative procedure provided by G.S. 105-392 (now G.S. 105-375). The effect upon the creditors and heirs of the deceased taxpayer is the same whichever procedure is followed. Therefore, we reach the conclusion reached by the Court of Appeals that foreclosure of a tax lien by judgment and execution, pursuant to G.S. 105-392 (now G.S. 105-375), is an exception to the general rule that land may not be sold under an execution issued after the death of the judgment debtor.

[3]   The property here in controversy was sold under the execution 30 days after the Administrator qualified. G.S. 105-392(c) (now G.S. 105-375(i)) provides that the sale under such execution shall be "in the same manner as other property is sold under execution."

Execution sales generally are governed by G.S. 1-339.51 to G.S. 1-339.71. Nothing in the record indicates that these statutory requirements were not complied with, except with reference to the notice of the execution sale. As to that, in ordinary execution sales, G.S. 1-339.51 to G.S. 1-339.54 control. These statutes require that notice of an execution sale shall refer to the execution authorizing it, shall designate the date, hour and place of sale, describe the real property to be sold sufficiently to identify it, and shall state that the sale will be made to the highest bidder for cash. Such notice is required to be posted at the courthouse door for 30 days immediately preceding the sale and, in addition, must be published in a newspaper published in the county (assuming, as is true in Henderson County, that there is a qualified newspaper published therein) once a week for four successive weeks. Nothing in the present record indicates that this posting and publication were not done.

In addition, however, G.S. 1-339.54 requires the sheriff, at least ten days prior to the sale, to serve upon "the judgment debtor" a copy of the notice of sale if he is to be found in the county and, if not, to send a copy of such notice by registered mail to "the judgment debtor" at his last address known to the sheriff. However, G.S. 105-392(c) (now G.S. 105-375(i)) provides that in the tax foreclosure sale, "In lieu of personal serv-

ice of notice on the owner of the property, registered or certified mail notice shall be mailed to the listing taxpayer, at his last known address, at least one week prior to the day fixed for said sale."

The Administrator of Frank Osteen's Estate testified, in support of his motion, that he made diligent search among the papers of the deceased and found no such notice and no such letter was delivered to him by the post office, though he requested it to send to him all undelivered mail addressed to the deceased. It was stipulated by counsel that there was no record of a return receipt showing that such notice had been sent by registered or certified mail to Frank Osteen by the Sheriff of the County. The trial court found that no notice of the sale was given to the Administrator or to the heirs of Frank Osteen. The court made no finding as to whether such notice had been mailed by registered or certified mail to the last known address of Frank Osteen, the listing taxpayer. The evidence would support, but does not compel, a finding that such notice was not so mailed.

As noted above, G.S. 105-397.1 (now G.S. 105-394) provides, "The failure to make or serve any notice mentioned" in the Machinery Act shall be deemed an irregularity which shall not "invalidate the sale of tax liens on real estate or sale of real estate in tax foreclosure proceedings."

If this statutory provision be given effect, then it would be entirely possible for the owner of a home, farm or business property, who has actually paid the taxes levied thereon, but who is, by virtue of erroneous record-keeping by the tax collector, reported as a delinquent in the payment of such taxes, and to whom the required notices of the docketing of the tax judgment and the sale under execution are not properly mailed, to have his property sold without his knowledge. In that event, G.S. 105-393 (now G.S. 105-377) would seem to preclude him from instituting any action or proceeding to contest the validity of the purchaser's title or to make any motion to reopen or set aside the judgment after one year from the date on which the purchaser recorded his deed. It is a matter of common knowledge that notices of sales of tax liens and notices of sales under execution published in newspapers are frequently not read by taxpayers and others who have no reason to suspect that their properties are included therein.

We are not prepared to hold, and do not here hold, that failure of the taxing authority to notify successors to the legal title of the listing taxpayer to the property, or holders of liens thereon, of its proposed sale of the property for taxes will render the sale thereof, pursuant to G.S. 105-392 (now G.S. 105-375) invalid. We do hold that the giving of the notices of the docketing of the judgment and of the sale under execution, required by G.S. 105-392 (now G.S. 105-375), is indispensable to a valid sale under that statute and that the provision of G.S. 105-397.1 (now G.S. 105-394), to the contrary, is in conflict with Article 1, § 19, of the Constitution of North Carolina. The validity of the remaining provisions of that statute is not presently before us.

When notice of the execution sale is sent by registered or certified mail to the listing taxpayer at his last known address, as is required by G.S. 105-392 (now G.S. 105-375), it is reasonably probable that he, if living and still the owner of the land, or his administrator and heirs, if he be deceased, or his transferee, if he has conveyed the property, will be made aware of the impending sale of the property so that he, or such successor in interest, may take appropriate steps to avoid a sale of it for a grossly inadequate price. Such notice, in conjunction with the posting and publication also required by the statute, would, in our opinion, be sufficient to satisfy the fundamental concept of due process of law and, therefore, to comply with Article 1, § 19, of the Constitution of North Carolina and the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States. To require the foreclosing county to go further and determine, at its peril, that the listing taxpayer still lives and still owns the land, or if he does not, to give such notice to his administrator, heirs or transferee, would impose an intolerable burden upon the county and would render the use of the procedure established by G.S. 105-392 (now G.S. 105-375) completely impracticable. Where, however, the statutory alternative to foreclosure by court action is prescribed in G.S. 105-391 (now G.S. 105-374) is a sale without any notice except by posting and publication, the statutory alternative offends the fundamental concept of due process of law. See: *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed. 2d 556 (1972) ; *Armstrong v. Manzo,* 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed. 2d 62 (1965). Such statutory procedure is easily distinguishable in this respect from a sale under a power contained

Henderson County v. Osteen

in a mortgage or deed of trust, wherein the mortgagor or grantee consents to such sale procedure.

In *Street v. McCabe*, 203 N.C. 80, 164 S.E. 329 (1932), it was alleged that a tax sale was irregular in that the purchaser of the lien was incorrectly named in the certificate issued upon the sale of the lien. Speaking through Justice Adams, this Court said:

> "In selling land for taxes officers should observe the statutory requirements; but all irregularities are not fatal. Under the former law when strict compliance with all salient provisions was demanded it was not easy to make a sale by which title to real estate was conveyed. A large proportion of the taxes was never collected, and a more liberal system of sales became a necessity. Provision was made for certificates of sale by which the holder acquired 'the right of lien' as in case of a mortgage. The relief given him was in the nature of an action to foreclose and the relief given the owner was the right of redemption. Statutes were enacted to cure immaterial irregularities, including any irregularity or informality in the manner or order in which any real estate may be offered for sale and any irregularity in any proceeding or requirement of the law. N. C. Code, 1927, secs. 8020, 8021. These provisions and the changed mode of procedure in the sale of land for taxes lead us to the conclusion that the alleged irregularities as to the advertisement and sale do not entitle the defendants to a judgment invalidating the procedure."

In that case, the irregularity in question was not a total failure to send the listing taxpayer the notice required by the statute. Furthermore, the constitutionality of a statute permitting a sale without such notice was not before the Court.

In *Geer v. Brown*, 126 N.C. 238, 35 S.E. 470 (1900), and in *Sanders v. Earp*, 118 N.C. 275, 24 S.E. 8 (1896), there was a failure by the sheriff to give notice by mail to the taxpayer of the pending sale of land for taxes and this Court, speaking through Justice Montgomery, sustained the validity of the sales on the ground that "such notice, while required in the statute, is declared in the same to be a mere irregularity insofar as the purchaser is concerned." In *Sanders v. Earp, supra,* Justice Montgomery suggested that the remedy of the landowner so deprived of his property might be to sue the sheriff to compel

him to "respond in damages to the value of the land." In neither of these cases did the Court consider the question of the constitutionality of the provision making the requirement of such notice merely a directory provision and the want of notice a mere irregularity not affecting the validity of the deed.

In *Edwards v. Arnold,* 250 N.C. 500, 109 S.E. 2d 205 (959), speaking through Justice Bobbitt, later Chief Justice, this Court said: "Having decided that, upon the evidence presented, the sheriff's deed was void and conveyed no title, we pass, without consideration * * * whether G.S. 105-392 [now G.S. 105-375] in the respect challenged is unconstitutional."

In *Price v. Slagle,* 189 N.C. 757, 128 S.E. 161 (1925), speaking through Justice Varser, this Court held a tax deed invalid for failure of the purchaser of the tax lien to give the notice prescribed by the statute and said:

> "The Legislature has the power to prescribe the details for statutory foreclosure of the taxpayer's equity of redemption in other ways than by judicial process, and may regulate and declare directory, and not vital, the administrative duties therein, which are to be performed by public officers. It has the power to change or abolish these duties, insofar as they are not basic or jurisdictional. *The requirement of notice to the defaulting taxpayer, who is the landowner, may be prescribed and regulated within reasonable limits by the Legislature, but cannot be dispensed with.* Such a requirement is subject to the test of 'due process of law.' " (Emphasis added.)

In the present case, we are presented with this question: When a county which has purchased a tax lien at a valid sale thereof and which, after notice to the listing taxpayer, has docketed a judgment and issued execution in accordance with the procedures prescribed in G.S. 105-392 (now G.S. 105-375), may the county, after the death of the taxpayer, without mailing to his last known address by registered or certified mail, as specified in the said statute, sell his land, at a sale otherwise held in conformity to the statute, and convey a valid title to the purchaser. We hold that the county may not do so for the reason that the provision of G.S. 105-397.1 (now G.S. 105-394) declaring the failure so to mail the prescribed notice to the listing taxpayer a mere irregularity, not affecting the validity of the

deed, is unconstitutional. We do not have before us the validity of any other provision of the statute.

The Superior Court made no finding as to whether the notice of sale required by G.S. 105-392 (c) (now G.S. 105-375 (i)) was mailed as specified in that statute. Consequently, we find and hold that the judgment of the Court of Appeals remanding this matter to the Superior Court for the entry of a judgment dismissing with prejudice the motion in the cause filed by the Administrator and the heirs of Frank Osteen was error. The matter must be remanded to the Superior Court for a finding by it as to whether the notice of the execution sale required by G.S. 105-392 (c) (now G.S. 105-375 (i)) was mailed by registered or certified mail by the sheriff addressed to Frank Osteen, at his last known address, at least one week prior to the date fixed for the execution sale. If such notice was so mailed, then a judgment denying the motion in the cause would be proper. If no such notice was mailed, a judgment similar to that entered by Judge Friday, from which the appeal to the Court of Appeals was taken, would be proper.

Reversed and remanded.