IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 24-884

Filed 4 June 2025

Property Tax Commission, No. 22 PTC 0029

IN THE MATTER OF THE APPEAL OF:

TRADE LAND COMPANY, LLC, Appellant,

FROM THE DECISION OF THE PITT COUNTY BOARD OF EQUALIZATION AND REVIEW.

Appeal by appellant from decision of North Carolina Property Tax Commission entered 22 March 2024. Heard in the Court of Appeals 9 April 2025.

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Daniel L. Colston, S. Leigh Rodenbough IV, and Ashley Hodges Morgan, for appellant.*

*Pitt County Legal Department, by R. Matthew Gibson, for appellee.*

ARROWOOD, Judge.

Trade Land Company, LLC ("appellant") appeals from the decision of the North Carolina Property Tax Commission ("the Commission") affirming the decision of the Pitt County Board of Equalization and Review ("the Board") to revoke the Present-Use Value ("PUV") status of appellant's property subject to the decision. For the following reasons, we affirm the decision of the Commission.

## I. Factual Background

This case concerns the County assessor's alleged failure to provide proper notice to a corporate landowner before revoking its tax-deferred status as to certain

properties it owns. The following facts are established by the Record and Transcript of the hearing before the Commission. The facts for the most part are not in dispute.

Brothers Joshua and Will Clark, along with their father Edwin, are members and managers of appellant, a limited liability company, which owns 47 tax parcels in Pitt County, North Carolina. For four years, between 2018 and 2021, appellant participated in the PUV tax-deferral program for 11 of these parcels. The PUV program allows for the appraisal of property that is used primarily for agriculture, horticulture, or forestry at that property's present use value, and for the deferral of excess taxes that would be otherwise due under the property's standard valuation. N.C.G.S. § 105-277.4, 277.3 (2020).

If a business entity is seeking a PUV deferment, its "principal business" must be one of the above qualifying uses. *Id.* § 277.2(4)(b)(1). Appellant's 11 parcels had qualifying uses; however, as its counsel conceded at the hearing before the Commission, the appellant's overall principal business did not. Therefore it is undisputed under the Record before us that these properties did not qualify for PUV treatment. Despite this fact, the Pitt County tax assessor at the time of appellant's first application to the PUV program advised one of appellant's managers that it did qualify for the program, and, following a 2021 audit, appellant was allowed continued participation on 25 January 2022.

That changed in December 2022. In August 2022, Russell Hill ("Hill") was appointed as tax assessor for Pitt County. Thereafter, when appellant sought to sell

a portion of one its tax-deferred parcels, Hill began to investigate appellant's PUV qualification. As a part of his investigation, Hill discovered that appellant was primarily a real estate business. On 5 December 2022, Hill called Joshua Clark to inform him that he had determined that appellant's properties did not qualify for PUV treatment. That same day, Cynthia Moore, the Pitt County Special Property Analyst, informed appellant by letter that it did not qualify, that its 11 parcels that had previously been granted PUV status were being removed from the PUV program, and that the deferred taxes were now due. Hill emailed Will Clark on 8 December, explaining that if he would like to appeal the revocation decision, he could either have it heard at the final meeting of the Board on 12 December, or when the Board began meeting again in the spring of 2023.

Will Clark elected to attend the 12 December hearing and offered evidence and presented arguments in support of the LLC's appeal. The Board affirmed Hill's decision to disqualify appellant from the PUV program. The LLC appealed to the North Carolina Property Tax Commission on 11 January 2023 and the appeal was heard on 10 January 2024.

At the hearing, appellant argued that it had not been provided proper notice under N.C.G.S. § 105-296(i), which requires notice prior to the Board's first meeting of the year when a property receives a new appraisal or assessment. The Commission affirmed the decision of the Board. It concluded that N.C.G.S. § 105-394 was dispositive in the matter, which defines a failure to give notice as an immaterial

irregularity for purposes of tax assessment and therefore the lack of proper notice would not affect the decision of the Board. The Commission further concluded that appellant had actual notice and the opportunity to be heard before the Board. Appellant filed a notice of appeal to this Court on 18 April 2024.

## II.    Discussion

Appellant raises two issues on appeal: whether the Commission erred as a matter of law by relying on N.C.G.S. § 105-394(9), which appellant claims was ruled unconstitutional by the North Carolina Supreme Court; and whether the Commission erred as a matter of law in failing to apply the notice requirements of N.C.G.S. § 105-296(i). We address these arguments as follows: first, we determine whether the statutory notice requirements were met; second, even assuming these requirements were not, we answer whether the Commission reliance on N.C.G.S. § 105-394(9) was in error; and finally, we address whether the notice and opportunity to be heard that appellant received was in keeping with constitutional strictures.

### A.    Standard of Review

The scope of our review of a decision of the Property Tax Commission is as follows:

> So far as necessary to the decision and where presented, the court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of any Commission action. The court may affirm or reverse the decision of the Commission, declare the decision null and void, or remand the case for further proceedings; or it

may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions, or decisions are any of the following:

> (1) In violation of constitutional provisions.
> (2) In excess of statutory authority or jurisdiction of the Commission.
> (3) Made upon unlawful proceedings.
> (4) Affected by other errors of law.
> (5) Unsupported by competent, material, and substantial evidence in view of the entire record as submitted.
> (6) Arbitrary or capricious.

N.C.G.S. § 105-345.2(b) (2023). We review questions of law *de novo*, where we freely substitute our own judgment, while issues of sufficiency of evidence are reviewed in light of the whole record. *In re Appeal of Greens of Pine Glen Ltd.*, 356 N.C. 642, 647 (2003). "Issues of statutory construction are questions of law, reviewed *de novo* on appeal." *McKoy v. McKoy*, 202 N.C. App. 509, 511 (2010) (citation omitted).

### B.     Notice Under the Machinery Act

This first inquiry seems simple on its face: whether appellant was provided with the proper notice required under Subchapter II of the N.C.G.S., also known as the Machinery Act. However, the Machinery Act itself is a labyrinthine compilation of statutes that requires careful interpretation. Our primary purpose in this endeavor is to give effect to the legislature's intent. *First Bank v. S & R Grandview, L.L.C.*, 232 N.C. App. 544, 546 (2014). Further, "[s]tatutes dealing with the same subject matter must be construed *in pari materia*, as together constituting one law,

and harmonized to give effect to each." *Williams v. Williams*, 299 N.C. 174, 180–181 (1980) (internal citations omitted).

Under the Machinery Act, when an assessor determines that property is no longer eligible for the PUV program, the assessor must provide written notice to the taxpayer as required by N.C.G.S. § 105-296(i). N.C.G.S. § 105-277.4(b1) (2020). This notice statute provides:

> Prior to the first meeting of the board of equalization and review, the assessor may, for good cause, change the appraisal of any property subject to assessment for the current year. Written notice of a change in assessment shall be given to the taxpayer at his last known address prior to the first meeting of the board of equalization and review.

N.C.G.S. § 105-296(i) (2024).

This notice requirement could be argued to be in conflict with the timing for losing PUV eligibility and the resultant tax bill:

> The deferred taxes for the preceding three fiscal years are due and payable in accordance with G.S. 105-277.1F when the property loses its eligibility for deferral as a result of a disqualifying event. A disqualifying event occurs when the land fails to meet any condition or requirement for classification or when an application is not approved.

N.C.G.S. § 105-277.4(b1). N.C.G.S. §105-277.1F makes deferred taxes "due and payable *on the day* the property loses its eligibility for the deferral program as a result of a disqualifying event." (emphasis added). Therefore, as soon as land fails to meet a condition for PUV status, it is disqualified, and the deferred taxes are due the day

the disqualification occurs. However, it would be impossible to follow the requirements of N.C.G.S. § 105-296(i) if the disqualifying event occurs after the first meeting of the board of equalization and review, therefore creating an apparent conflict between the statutory provisions.

However, a harmonization between these statutes is possible through reference to the definition section of the Machinery Act, and additional aspects of the PUV program. The Machinery Act defines "appraisal" as the "true value of property or the process by which true value is ascertained," while "assessment" is the "tax value of property or the process by which the assessment is determined." N.C.G.S. § 105-273(2), (3) (2016). Applying these definitions to appellant, when Hill, as a result of his investigation, disqualified the property because the LLC was not a qualifying business, he changed neither the appraisal nor the assessment of the LLC's properties. These determinations had already occurred; indeed, they were what allowed Pitt County to determine the amount of tax that appellant was permitted to defer. On 5 December 2022, when Hill generated a new tax bill that was immediately due, this was neither a new appraisal nor a new assessment; rather, it was simply changing the status of appellant's already-assessed taxes from deferred to due. Thus, we find the timing requirements of N.C.G.S. § 105-296(i) were not implicated when appellant lost its PUV status.

The placement of N.C.G.S. § 105-296(i) within the Machinery Act further confirms our view. This statute is not situated merely within the instructions for the

PUV program but is part of the general description of the powers and duties of the assessor. *See* N.C.G.S. § 105-296. Because subsection (i) is the only reference to the assessor's duties in situations where a property's tax burden changes, it was logical for the General Assembly to reference this section when creating this PUV system that involved the potential for an assessor to change a property's tax burden, albeit, critically, one that involved a different mechanism than re-appraisal or re-assessment.

When the requirements implicated upon a new appraisal or assessment are set aside, the notice required when property loses its PUV status is simply that: notice. Because Hill provided appellant with notice that it was disqualified from the program and provided it with the opportunity to appeal that disqualification, we conclude that the requirements of the Machinery Act were satisfied. As a result of Hill's provision of notice, appellant was able to be heard before the Board, and before the Commission. As discussed below, we find the notice appellant was provided sufficient.

We note that an earlier notice requirement in the case of a re-appraisal or re-assessment, as opposed to deferred taxes coming due, comports with common sense. When a property is reappraised or the value is reassessed, the early notice requirement allows the property owner to appeal the value of the property on which the taxes are based near the beginning of the tax year; however, when there is a change in the determination of whether a property qualifies for PUV status, the question is not the value of property or the amount of taxes to be assessed, but rather

whether the property owners will lose the benefit of a lower tax rate. The issue then is not the value of the property but whether the property qualifies under the PUV statute for a deferral of some of the taxes already assessed. Given that a loss of PUV status can occur at any time within a tax year, there is no logical reason to require a hearing at the first meeting of the Board, as opposed to another meeting after the loss of PUV status has been noted.

### C.    Constitutionality of N.C.G.S. § 105-394(9)

Assuming, *arguendo*, that a change in PUV status could be considered a change in appraisal or assessment, we consider the Commission's holding that N.C.G.S. § 105-394(9) was sufficient to affirm the ruling of the Board. Appellant challenges the Commission's reliance on § 105-394(9), which they argue has been held unconstitutional by the North Carolina Supreme Court in *Henderson Cnty. v. Osteen*, 292 N.C. 692 (1977). At issue in *Osteen* was the application of § 105-394(9) to Henderson County's failure to provide any notice to a deceased taxpayer that the county was selling land owned by him on which the county had a tax lien. *Id.* at 710.

The statute at issue provides: "[i]mmaterial irregularities in the listing, appraisal, or assessment of property for taxation" do not invalidate taxes imposed as a result. N.C.G.S. § 105-394. The section provides eleven example of immaterial irregularities, including "failure to make or serve any notice mentioned in this Subchapter." *Id.* § 105-394(9). The *Osteen* Court held that the county was not permitted to dispense with notice by relying on this statute, since the failure to give

notice was in conflict with Article 1 § 19 of the North Carolina Constitution. *Osteen*, 292 N.C. at 708, 710.

The challenge to § 105-394(9) in *Osteen* was an as-applied challenge, rather than a facial challenge. The difference between these challenges is "that an as-applied challenge represents a plaintiff's protest against how a statute was applied in the particular context in which plaintiff acted or proposed to act, while a facial challenge represents a plaintiff's contention that a statute is incapable of constitutional application in any context." *Town of Beech Mountain v. Genesis Wildlife Sanctuary, Inc.*, 247 N.C. App. 444, 460 (2016) (quotations and citation omitted). Rather than abrogate the statute, the *Osteen* Court held that the statute's *application* to the action taken by the county in that particular case was unconstitutional. *Osteen*, 292 N.C. at 710.

What distinguishes the as-applied challenge in *Osteen* from the facts of the case *sub judice* is the total failure to provide notice in the former, and the alleged failure to provide the notice at the appropriate time, as required under the Machinery Act, in the latter. As the issue of sufficient notice was not before the *Osteen* Court, its opinion is silent as to what would constitute proper notice. Because the facts in the case *sub judice* and the facts in *Osteen* are substantially different, we conclude that *Osteen* is not controlling authority and the Commission did not err in relying on § 105-394(9).

> D.    <u>Actual Notice and Opportunity to Be Heard</u>

Finally, we address the fact that the Commission, while holding that § 105-394(9) was dispositive, also noted that appellant received actual notice and a hearing before the Board, and participated in that hearing. We hold, even assuming, *arguendo*, that the Board or the Commission erred in their statutory reliance, that appellant's constitutional rights were preserved by the notice and hearing they were provided by the Board.

"The fundamental premise of procedural due process protection is notice and the opportunity to be heard." *Peace v. Emp. Sec. Comm'n of N.C.*, 349 N.C. 315, 322 (1998) (citation omitted). This notice and opportunity must be meaningful, although the exact mechanism according to which these are provided depends on the circumstances of each case. *Id.* We have previously held that where a plaintiff knew of the existence and scope of a hearing, and while present at the hearing asked questions and presented testimony, his procedural due process rights had not been violated. *Lipinski v. Town of Summerfield*, 230 N.C. App. 305, 309 (2013). While we recognize that the particular facts of a meaningful notice case are not dispositive for future cases, we note that the appellant, in the case *sub judice*, received the same opportunity to be heard as the appellant in *Lipinski*.

Appellant's current challenge as to whether the notice provided was sufficient is the alleged insufficient time between the notice and the hearing. Appellant received notice of the property's loss of PUV status 5 December, and on 6 December was informed that it could appeal Hill's decision at the 12 December meeting of the

Board, or the first meeting of the Board in 2023. Having been provided with two dates from which to choose, appellant's manager chose the hearing date which it now complains was insufficient to comport with due process. Appellant's manager attended and presented all the evidence appellant sought to produce. Nowhere in the record is there any indication that appellant sought more time to obtain counsel or marshal additional evidence. Nor is there any indication that it sought to continue the date of the hearing that it had selected.

Appellant now argues that the notice was not sufficient to comport with due process because there was not enough time to hire counsel and marshal the evidence needed to properly represent its case before the Board. The appellant has not documented any attempts it made to hire counsel, instead simply averring that there was not enough time. Appellant further contends that, in essence, had it had more time, it would have had the opportunity to develop a theory of the case based on Trade Land's total income that would have allowed it to challenge Hill's decision more thoroughly. However, appellant had the opportunity to argue this before the Board but did not do so. Further, counsel never raised the issue of lack of procedural due process before the Commission. In fact, appellant has not presented this argument in its briefs to this Court. The argument related to the inability to marshal the necessary evidence was presented for the first time in its oral arguments before us.

Appellant consistently stipulated that Trade Land LLC was not primarily engaged in a qualifying business in its 2021 audit and before the Board and the

Commission. Its arguments before the Commission appeared to rely on an estoppel theory that the county, having initially found the properties to be eligible for PUV status, could not in the same tax year after receiving additional information and a change in the tax assessor change its determination, because it was too late to have that determination challenged before the April meeting of the Board as required by the Machinery Act. Having determined that this argument now fails we find the Commission properly rejected the contention.

Appellant has now changed horses midstream to argue that the notice it received does not comport with due process because had it been given more time, it *might have been able* to develop evidence that the tax assessor was incorrect in the determination that appellant was not a qualifying business. Further, appellant has not alleged that this line of inquiry would have been successful. In fact, this argument fails given the multiple times appellant conceded that Trade Land LLC was not a qualifying business, both before the Board and later to the Commission.

Next, appellant claims it was harmed because the timing of the notice gave insufficient time to proactively address the loss of PUV status by placing the properties that could qualify for PUV status into a separate entity that only owned those properties. However, at oral argument, appellant admitted it did create this new entity, Trade Family Farms, LLC, was created and that, although its application was initially denied, this decision was overturned by the Board and those properties now enjoy deferred-tax status for the new tax year. Additionally, such change, if it

were effected earlier in the prior tax year, would not have been sufficient to save the tax status for the previous disqualification.

In sum, when examining all the evidence in this case, we conclude that appellant's constitutional rights to due process were not violated by Pitt County.

### III.    Conclusion

For the foregoing reasons, we affirm the decision of the North Carolina Property Tax Commission.

AFFIRMED.

Judge ZACHARY concurs.

Judge FREEMAN concurs in result only.