Action by plaintiffs against the defendant and from a judgment rendered in favor of the defendant upon a jury verdict, the plaintiff appeals. *Page 759 
The plaintiffs contend that they are the owners of the lands covered by State Grant No. 3276, described as "wild mountain land," not in cultivation.
Upon the trial plaintiff offered a registered chain of title connecting with grant No. 3276, through one E. L. P. Ector. Ector's conveyance to plaintiffs is dated 23 June, 1905.
For the purpose of attack plaintiff offered in evidence deed from H. D. Dean, tax collector, to F. L. Siler, dated 25 June, 1910, registered 27 June, 1910, and a deed from F. L. Siler and wife to the defendant, C. W. Slagle, dated 30 November, 1910, registered 1 December, 1910.
T. A. Price, plaintiff, testified that he claims the lands in controversy; that he and his coplaintiff purchased the lands from Ector 23 June, 1905; that an error was discovered in one of the courses in the original deed and that Dr. E. L. P. Ector made the second deed, a quitclaim, to correct the description; that the taxes each year were paid, but that he is unable to find his receipts for 1906, 1908 and 1912, and that he paid the taxes for 1908; that he always received a receipt and there has been no controversy as to the payment of his taxes; that he does not have his 1908 tax receipt, and that he does not know where this receipt or his quit-claim deed from Dr. Ector, or his deed from John Bonner, to himself, can be; that he still claims the land.
W. B. McGuire testified that he knows where the lands described in Grant 3276 are supposed to be; that it is "wild mountain land" and he knows where Slagle claims it is; that within the last three years the defendant put a wire fence on a small corner of it; that he has known the land for about ten years. "The fence, above mentioned, is the only act of possession in the last few years that I have seen on this land, outside of the markings.No one is in actual possession of it now. There was a wire fence built on a corner of two tracts of land and reached over into the inside of a third tract. Two tracts belonging to Mr. Slagle and supposed Price tract was the other, and this fence covered from a quarter to half an acre. On the part covered by 3276 the fence did not cover over an eighth of an acre." This witness further said that he took down the fence, as Price's agent and also on his own behalf, as owner of the Price land; that he entered the Price land to cure the defects and not against Price, and that he took the fence down because he did not think that Slagle had any right.
W. T. Scott testified that he was chain-bearer within the last year or two on a survey supposed to be for Slagle, and they cut into a log and found some markings — this was a forked chestnut corner, and that Slagle took the bark and kept it and had it sawed out so it could be preserved, and that Slagle had him to mark the block so he would know it. *Page 760 
E. G. Cruise testified that he knew the land, and that it was "wild mountain land," and that there was just one fence there.
It was admitted that the defendant built a barbed-wire fence, which is the fence referred to by all the plaintiff's witnesses.
The defendant offered summons in this action, dated 14 May, 1924; the deed from Dean, tax collector, to Siler, dated 25 June, 1910, registered 27 June, 1910; affidavit of F. L. Siler, dated 27 June, 1910. The plaintiff objected to the introduction of the Dean tax deed and the Siler affidavit, for that "all taxes due had been paid and that there were no taxes due and unpaid on said land by which said deed could have been executed; that the lands purported to be covered by said conveyance and mentioned in said affidavit were not duly listed, assessed and taxed, nor was any notice or publication made thereof, and that the affidavit is a condition precedent to the deed and does not set forth the facts particularly, but only in such general way that said affidavit is insufficient and did not warrant the deed to have been made thereon, and that said deed is spurious and void." To the overruling of this objection, plaintiffs excepted.
H. D. Dean testified that he was sheriff and tax collector in 1907 and 1908, and that in 1909 he collected taxes after he went out of office as sheriff, and that he executed the deed for the Ector lands to Dr. Siler; that Ector was a nonresident.
The defendant offered in evidence deed without warranty from F. L. Siler to C. W. Slagle, dated 30 November, 1910, describing the land in controversy. Witness, Dean, further stated the consideration of his making the deed to Dr. Siler was $3.00 and something" on the Ector land, and that he advertised and sold the land because the taxes for 1908 on this land had not been paid; that he kept the tax sale book as sheriff, and after he sold the land it was never redeemed, either before or after the deed to Dr. Siler; that no one, except Siler, ever paid the witness taxes on land for 1908. Witness stated on cross-examination that he did not remember any conversation with Dr. Ector or any one else about this land, and that his books showed the name Price after the name Ector in parenthesis, and thatthis was as he took it off the tax list, and that he did not know of anyother Ector or Price land outside of this in controversy.
Defendant offered in evidence record of tax sale book for 1909, covering sales for taxes due for 1908 and showing a sale to Dr. F. L. Siler. Defendant introduced duplicate tax list identified by witness, to which the defendant objected and excepted. Witness testified that he made the entries in the tax sale book about the time the sale was made, and had not made any in it since, and that he made the entries in the duplicate tax list whenever he delivered the certificate of sale to Dr. Siler. *Page 761 
Defendant Slagle testified that he is a cousin to Dr. Siler, who is now dead, and that he purchased the land from Siler, and had nothing whatever to do with Siler's purchasing it at the tax sale; that he paid Dr. Siler $100.00 for the land in 1910, and had paid the taxes on it from then up to the present time. "This land lies in Cartoogechaye Township."
The tax deed is in usual form. The affidavit of F. L. Siler is as follows:
"North Carolina — Macon County:
"F. L. Siler, being duly sworn, deposes and says: That at a sale of lands for the nonpayment of taxes due for the year 1908, made by H. D. Dean, tax collector of Macon County, at the courthouse door in Franklin on 3 May, 1909, affiant purchased the following portion of the lands covered by State Grant 3276, to wit: (description same as in deed).
"The said lands were taxed in the name of E. Ector for the year 1908; that upon diligent inquiry the said E. Ector could not be found in the county, and that no one was in the actual possession or in the occupancy of the lands above described; that affiant caused to be published in the `Franklin Press,' a weekly newspaper published in the town of Franklin, county of Macon, North Carolina, notice stating when he purchased the lands aforesaid, a description of the same, in whose name they were taxed, for what year taxed, and when the time of redemption would expire; that said notice was inserted in said newspaper three times, the first not more than five months and the last not less than three months before the time of redemption expired; that affiant has complied with the conditions of chapter 72 of the Revisal of 1905, and acts amendatory thereto as to giving notice of such purchase, and that neither the said E. Ector nor any other person has redeemed or offered to redeem said land.
"F. L. Siler."
The jury returned the following verdict:
"1. Did the plaintiffs pay the taxes for 1908 on the land in controversy in this action at any time on or before the date of the deed from H. D. Dean, sheriff, to F. L. Siler, as alleged? Answer: No.
"2. Is the plaintiffs' cause of action for the recovery of the property sold by H. D. Dean, tax collector, for the nonpayment of taxes barred by the three years statute of limitations? Answer: Yes.
"3. Is the plaintiffs' cause of action for the removal of the cloud upon their title, as alleged, barred by the ten years statute of limitations? Answer: Yes.
"4. Is the defendant's, C. W. Slagle's, title to the land in controversy spurious and void? Answer: No. *Page 762 
"5. Are the plaintiffs the owners of the lands described in the complaint, as alleged? Answer: ______.
"6. Has the defendant trespassed upon the lands described in the complaint, as alleged? Answer: ______.
"7. What damage, if any, are the plaintiffs entitled to recover on account of said trespass? Answer: ______."
The court charged the jury that upon the first issue the burden of proof was upon the plaintiff to establish, by the greater weight of the evidence, that he had paid the taxes on the land in controversy for the year 1908 on or before the date of the deed from Dean, tax collector, to Siler — that is, during the time allowed for the redemption of land sold for taxes. The court below made the answers to the remaining issues depend on the answer to the first issue. The whole case depended on the fact of the payment of the 1908 taxes by plaintiffs. The court rendered judgment for the defendant upon the verdict. The plaintiff, having excepted, appealed.
The plaintiffs are the owners of the lands in controversy under a chain of title connecting with State Grant No. 3276, unless the defendant has acquired title to the locus in quo under the tax sale to Siler. It is a fair interpretation of the record that the introduction by the plaintiff of the tax deed from Dean, tax collector, to Siler and the affidavit appearing of record and the deed without warranty from Siler to the defendant were treated as a method of showing that the defendant claimed the title under a common source. The defendant introduced this tax deed, the Siler affidavit and the Siler deed, to him for the purpose of showing his title.
The evidence in the record discloses no actual possession on the part of the defendant and his predecessor in title at any time for as long a period as three years, but only the placing of a fence on a small portion thereof within three years before the institution of this action, and that no person was in actual possession of the premises when the action was instituted.
It is elementary learning that the constructive possession follows the better title under such circumstances. This brings us to a consideration of the validity of the defendant's tax title which he claims under the purchaser at the tax sale — F. L. Siler.
The Legislature has the power to prescribe the details for statutory foreclosure of the taxpayer's equity of redemption in other ways than by judicial process, and may regulate and declare directory, and not *Page 763 
vital, the administrative duties therein, which are to be performed by public officers. It has the power to change or abolish these duties, in so far as they are not basic or jurisdictional. The requirement of notice to the defaulting taxpayer, who is the landowner, may be prescribed and regulated within reasonable limits by the Legislature, but cannot be dispensed with. Such a requirement is subject to the test of "due process of law." The duty of the purchaser who elects to pursue the statutory method of foreclosure, as distinguished from foreclosure by judicial process in the courts, as required at the time of the instant tax sale, is absolute to follow, in strict compliance all mandatory and essential requisites to the validity of his title. This notice to the delinquent land-owner is one of these mandatory and essential requisites. 37 Cyc., 1423, 1425. Rexford v. Phillips, 159 N.C. 213. The purchaser is then proceeding in derogation of the common law and in derogation of the common right of the citizen to own his land. Doe v. Chunn, 1 Blackf. (Ind.), 336;Sibley v. Smith, 2 Mich. 486; Warren v. Williford, 148 N.C. 474; Mfg.Co. v. Rosey, 144 N.C. 370; Black on Interpretation of Laws (2 ed.), 570. Unless these provisions as to notice, which are required to be performed by the tax-sale purchaser, are liberally construed in favor of the land-owner, and strictly construed against divesting him of his estate, injustice may often result, and, in some cases, this may amount to oppression.
Ministerial officers who conduct proceedings in tax sales, and especially purchasers thereat, are required to comply with these provisions which bring notice to the citizen that his land is about to be lost; and if the title to the citizen's land is divested from him, it must be upon a strict and clear compliance with the express limitations and provisions fixed by the law itself. Lumber Co. v. Price, 144 N.C. 50; Hays v. Hunt,85 N.C. 303; McNair v. Boyd, 163 N.C. 478.
The trial court made the whole case turn upon the question of the payment of taxes for the year 1908 by the plaintiff, or some one for him. This view was evidently based on C. S., 8034, which provides, among other things, as follows: "No person shall be permitted to question the title acquired by a sheriff's deed made pursuant to this chapter without first showing that he, or the person under whom he claims title, had title to the property at the time of the sale, and that all taxes due upon the property have been paid by such person or the person under whom he claims title." This statute, Revisal, 2909, was considered by this Court in Rexford v.Phillips, supra. In that case, the Court, speaking through Walker, J., in a well-considered opinion, says: "The defendant, having obtained his deed in violation of the express terms of the statute, acquired no title." This is but a construction of the language of the statute which invokes its prohibitive terms *Page 764 
only when the title has been acquired "by a sheriff's deed made pursuant to this chapter." If the deed has not been made pursuant to — that is, according to, or in conformity with — the statutory provisions, then this provision in the statute does not apply. Both the provision as to the authoritative listing of property for taxes and the notice to the purchaser required under C. S., 8028, and his affidavit required by C. S., 8029, are material, basic acts. Both of these are necessary and prerequisite to bring the purchaser within the protection of this provision. Rexford v. Phillips,supra; King v. Cooper, 128 N.C. 347; Matthews v. Fry, 141 N.C. 582;Warren v. Williford, supra; Jones v. Schull, 153 N.C. 521.
Omitting from the instant case the question as to whether there has been any authoritative listing of the property in controversy for taxation, in either of the two ways pointed out in Rexford v. Phillips, supra, and, assuming that the tax deed is presumptive evidence thereof, and observing the clear decision in this latter case, reaffirmed in Stone v. Phillips,176 N.C. 457, we hold that no presumption arises from the sheriff's deed that proper notice was given to the landowner by the purchaser, as required by the statute, C. S., 8028. The affidavit required by C. S., 8029, is a necessary prerequisite to the validity of the tax deed. Sanders v.Covington, 176 N.C. 454; Rexford v. Phillips, supra.
The affidavit in the instant record states that the lands were taxed in the name of E. Ector for the year 1908, and that the notice published in the "Franklin Press" stated "in whose name they were taxed." It is, therefore, apparent that the affidavit is prima facie and the only evidence of the published notice. The tax book showed the name "Price" after the name "Ector" in parenthesis. The affidavit, therefore, does not comply with the express mandatory provision in C. S., 8028, that the notice shall state "in whose name it was taxed." Of course, the listing in the wrong name (C. S., 8019) does not make the sale void. Peebles v. Taylor, 118 N.C. 165;Stone v. Phillips, supra; Headman v. Comrs., 177 N.C. 261. This however, does not make less mandatory the requirement (C. S., 8028) that the notice shall state "in whose name it was taxed."
It is necessary for the purchaser to follow the legislative requirements strictly in order to obtain a valid deed by this statutory method. The evidence in the instant case shows that no other lands in that community were known as the "Ector-Price lands." Non constat that other lands were not known as Ector lands. The absent land-owner was entitled to have all the information that the statute required and in the exact form required by the statute. This is the purchaser's plain duty in order to divest the taxpayer of the title to his land by a method *Page 765 
which is in derogation of common right and the common law. C. S., 970, declaring the common law to be in force, first enacted in North Carolina in 1715, reenacted in 1778, and successively with each complete reenactment of our statute law, and finally in 1919, must be construed as a part of the same act as C. S., 8028.
We are further of the opinion that C. S., 8029, which requires that the affidavit of the purchaser shall state "particularly the facts relied on as such compliance" with C. S., 8028, is not met by the instant affidavit in regard to stating "when the time of redemption would expire." When a copy of the published notice does not appear as a part of the affidavit, we are constrained to hold that the mandatory character of this statute required the affidavit to state the time of the expiration of the period for redemption by giving the date at which it expires.
On account of the foregoing defects in the affidavit of the purchaser, we hold that the plaintiff is not precluded from prosecuting this action to remove a cloud on his title by his failure to pay the taxes or to tender them in his complaint. Rexford v. Phillips, supra.
The court below held that if the plaintiff, or some one for him, had not paid the taxes for the year 1908, the plaintiff was barred by the three years statute of limitations. This three years statute has been held not to apply when the suit is to remove a cloud, as distinguished from a suit to recover the land sold for taxes from the tax-sale purchaser, or his assigns, who are in possession of the lands so sold. McNair v. Boyd, supra;Cauley v. Sutton, 150 N.C. 330; Beck v. Meroney, 135 N.C. 532.
In the instant case the defendant is not in the actual possession, if the evidence appearing in the record is found to be true, and has never been in the actual possession of the lands in controversy, except such as may have resulted from the putting of the fence on the small portion adjoining his other lands, within three years just before this action was instituted. Therefore, it is apparent that the constructive possession of this "wild mountain land" has been in the plaintiff's constructive possession under their paper title. Upon these facts, if found by the jury to be true, the three years statute of limitations could not avail the defendant. Jordan v. Simmons, 169 N.C. 142; Oldham v. Rieger, 145 N.C. 254;Guthrie v. Bacon, 107 N.C. 337.
The tax deed, under which the defendant claims, not being sufficient to draw unto the defendant the constructive possession, left the plaintiffs in the constructive possession of the land and avoided the bar of the statutes of limitations pleaded by the defendants.
Of course, the owner must pay, or offer to pay, the taxes and all other incidental cost with interest as prescribed by statute, if the jury shall finally decide that he has not paid the taxes properly assessed *Page 766 
against him. The record in the instant case is silent as to the authority of the listing of the land in controversy, other than the inferences to be drawn from the affidavit and the tax deed, and, since the affidavit of the purchaser falls short of the statutory requirements as to notice, this question is now open.
C. S., 8035, 8036, 8037, provide another remedy for the purchaser at a tax sale, whereby he may have foreclosure by judicial process, in addition to his rights under C. S., 8028, 8029, 8030, to demand from the sheriff the tax deed. Wilcox v. Leach, 123 N.C. 74; Townsend v. Drainage Comrs.,174 N.C. 556; Headman v. Comrs., 177 N.C. 261.
The exceptions to the rejection of evidence may not occur again and are, therefore, not discussed.
There must be a
New trial.