McDONALD'S CORPORATION, Plaintiff, and LACY H. THORNBURG, Attorney General of North Carolina, Intervenor v. WILLIAM D. DWYER and wife, HESTER T. DWYER; JERONE C. HERRING, Trustee for Branch Banking and Trust Company; BRANCH BANKING AND TRUST COMPANY; and JONI-SON ENTERPRISES, INC., Defendants

No. 355PA93

(Filed 9 December 1994)

**Railroads § 13 (NCI4th)— abandoned railroad easement—presumption of title in adjoining owners—time limitation for contrary claim—unconstitutionality**

The first sentence of N.C.G.S. § 1-44.2(b), which creates a conclusive presumption that the title to land underlying an abandoned railroad easement vested in the adjacent property owner if no contrary claim of good and valid title was filed by another person within the statutory one-year period, is unconstitutional as applied against record title holders in possession because it does not provide sufficient notice, an opportunity to be heard, and just compensation before divesting owners of a valuable property interest.

**Am Jur 2d, Railroads §§ 82-86.**

Chief Justice Exum dissenting.

Justice Meyer joins in this dissenting opinion.

On discretionary review pursuant to N.C.G.S. § 7A-31 from a unanimous decision of the Court of Appeals, 111 N.C. App. 127, 432 S.E.2d 165 (1993), reversing an order entered 22 October 1991 by Judge David E. Reid, Jr., in Craven County Superior Court. Heard in the Supreme Court 11 April 1994.

*Ward and Smith, P.A., by Kenneth R. Wooten, for plaintiff-appellant.*

*Michael F. Easley, Attorney General, by James C. Gulick, Special Deputy Attorney General, for intervenor-appellant.*

*Moore & Van Allen, by Denise Smith Cline and A. Bailey Nager, for defendant-appellees William D. Dwyer, Hester T. Dwyer, Jerone C. Herring as Trustee, and Branch Banking and Trust Company.*

FRYE, Justice.

This case involves the ownership of land formerly subject to a railroad right-of-way easement which was abandoned by Seaboard Coastline Railroad prior to 19 June 1987. Defendants William D. Dwyer and wife, Hester T. Dwyer, have record title to the property at issue and have leased it to defendant Joni-Son Enterprises, Inc. Defendant Branch Banking and Trust Company holds a deed of trust on the Dwyers' property. Jerone C. Herring is the Trustee pursuant to the deed of trust. Plaintiff, McDonald's Corporation, is the owner of the property adjacent to the abandoned railroad easement.

Plaintiff does not contend that it has record title to the property at issue. However, plaintiff does contend that defendants lost whatever title they may have had to the property by failing to bring an action in accord with N.C.G.S. § 1-44.2(b) within one year after enactment of the statute and that title is now vested in plaintiff pursuant to the statute.

On 19 June 1987, the North Carolina Legislature enacted North Carolina General Statute section 1-44.2 (the "statute") which is entitled "Presumptive ownership of abandoned railroad easements." The statute provides in pertinent part:

(a) Whenever a railroad abandons a railroad easement, all right, title and interest in the strip, piece or parcel of land constituting the abandoned easement shall be presumed to be vested in those persons, firms or corporations owning lots or parcels of land adjacent to the abandoned easement, with the presumptive ownership of each adjacent landowner extending to the centerline of the abandoned easement. . . .

. . . .

(b) Persons claiming ownership contrary to the presumption established in this section shall have a period of one year from the date of enactment of this statute or the abandonment of such easement, whichever later occurs, in which to bring any action to establish their ownership. The presumption established by this section is rebuttable by showing that a party has good and valid title to the land.

N.C.G.S. § 1-44.2 (Supp. 1994).

On 19 June 1990, plaintiff filed this action, as an adjacent landowner within the definition of N.C.G.S. § 1-44.2, to quiet title and

**McDONALD'S CORP. v. DWYER**

[338 N.C. 445 (1994)]

eject defendants from the property at issue. Plaintiff alleged that defendants or their predecessors were required by statute to commence an action on or before 19 June 1988 to show good and valid title to the property in order to rebut the statutory presumption of ownership in plaintiff. Plaintiff further alleged that since no such action was filed within the statutory period as required by N.C.G.S. § 1-44.2(b), title to the property is vested in plaintiff.

Defendants countered that plaintiff is not entitled to the property pursuant to N.C.G.S. § 1-44.2 because the statute is unconstitutional, failing to provide notice or a hearing and effecting the taking of land without just compensation.

Plaintiff and defendants filed cross motions for summary judgment on the statute's constitutionality. The Attorney General for the State of North Carolina made a motion to intervene in the action to argue in favor of the statute's constitutionality. This motion was allowed on 3 June 1991. On 22 October 1991, Judge David E. Reid, Jr., granted plaintiff's motion for summary judgment and denied defendants' motion for summary judgment, upholding the constitutionality of the statute.

Defendants appealed to the Court of Appeals which reversed Judge Reid's order, finding that N.C.G.S. § 1-44.2 is unconstitutional as applied to fee simple landowners in possession of disputed property. The Court of Appeals reasoned that N.C.G.S. § 1-44.2 fails to provide fee simple landowners with adequate notice, an opportunity to be heard, and just compensation. On appeal, plaintiff-appellants contend that the Court of Appeals erred "when it found that defendant Dwyers are fee simple owners in possession and ignored controlling precedent when it held that as applied N.C.G.S. § 1-44.2 effects an unconstitutional taking without due process."

In analyzing a due process claim, we first need to determine whether a constitutionally protected property interest exists. To demonstrate a property interest under the Fourteenth Amendment, a party must show more than a mere expectation; he must have a legitimate claim of entitlement. *Board of Regents v. Roth*, 408 U.S. 564, 33 L. Ed. 2d 548 (1972). The facts in this case clearly indicate that defendants meet this requirement. Defendants are the only holders of record title to the property. Even if there are underlying disputes about the validity of their title, this should have no effect on defendants' standing to challenge the constitutionality of the statute. Defendants are also in open and full possession of the property.

Accordingly, defendants' property interest cannot be seized without their consent or due process of law. *Eason v. Spence*, 232 N.C. 579, 61 S.E.2d 717 (1950).

The sole basis for plaintiff-appellants' ejection action against defendants is North Carolina General Statute section 1-44.2. The general rule is " 'that a call for a monument as a boundary line in a deed will convey the title of the land to the center of the monument if it has width.' " *Goss v. Stidhams*, 68 N.C. App. 773, 776, 315 S.E.2d 777, 778 (1984) (quoting J. Webster, *Webster's Real Estate Law In North Carolina* §188 (Rev. Ed. 1981)). Subsection (a) of the statute is consistent with this common law presumption insofar as it applies to abandoned railroad easements. The second sentence of subsection (b) appears to also be consistent with the common law since it provides that the presumption is rebuttable by showing that a party has good and valid title to the land. The parties do not contest these provisions of the statute.

The first sentence of subsection (b) of the statute provides that persons claiming contrary to the presumption in subsection (a) must bring a lawsuit within one year of the enactment of the statute or the abandonment of the easement, whichever later occurs, or lose their right to rebut the presumption. It is this portion of the statute, which turns a rebuttable presumption into a conclusive presumption, that defendants contend violates their due process rights.

Notice and an opportunity to be heard prior to depriving a person of his property are essential elements of due process of law which is guaranteed by the Fourteenth Amendment of the United States Constitution and Article 1, section 17, of the North Carolina Constitution. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 94 L. Ed. 865, 873 (1950).

As early as 1877, this Court determined that notice greater than that provided by operation of law in the nature of a statute of limitations is required prior to divestment of a vested property interest. *See Trustees of the Univ. of North Carolina v. North Carolina R.R. Co.*, 76 N.C. 103 (1877). *Trustees* involved a North Carolina statute which required corporations to pay unclaimed corporate dividends to the Trustees of the University of North Carolina after five years and for-

feit them completely after ten years. The Court, under the United States Constitution and the law of the land clause of the North Carolina Constitution, rejected the argument that a statute of limitations could deprive persons of their vested property rights. The Court stated:

> 'We know of no case in which a legislative Act to transfer the property from A to B without his consent has ever been a constitutional exercise of the legislative power in any State in the Union.' (Citations omitted).

> . . . [T]he Act under review, not only bars the [dividend holder] of his right of recovery, but takes from him his property, transfers it to another and enables that other to recover and own it. The [dividend holder] not only loses his property, but by the magic of this Act and without consideration received, it is vested absolutely in another . . . .

*Id.* at 107.

Similar to the statute in *Trustees*, N.C.G.S. § 1-44.2 not only bars a right of recovery by operation of a statute of limitations, but by operation of a presumption, "transfers [property] to another and enables that other to recover and own it. The [holder] not only loses his property, but by the magic of this [statute] and without consideration received, it is vested absolutely in another." *Id.* The statute turns a rebuttable presumption into a conclusive presumption which effectively takes defendants' property without affording notice, an opportunity to be heard and just compensation.

This Court has found due process violations in several other statutes which, without prior notice, purport to effect a forfeiture of property rights. *See Henderson County v. Osteen*, 292 N.C. 692, 235 S.E.2d 166 (1977) (statute permitting a judgment on a tax lien and sale without notice held unconstitutional); *Eason v. Spence*, 232 N.C. 579, 61 S.E.2d 717 (requiring that remaindermen receive notice of foreclosure sale of a life estate and opportunity to be heard); *Price v. Slagle*, 189 N.C. 757, 128 S.E. 161 (1925) (requiring that defaulting taxpayers receive notice before their land is foreclosed).

Plaintiff-appellants rely on this Court's decision in *Sheets v. Walsh*, 217 N.C. 32, 6 S.E.2d 817 (1940), for the proposition that a self-executing statute that requires the owner to file suit and prove his claim does not cause vested property rights to be reduced to a mere

cause of action and such statute provides notice and opportunity to be heard in compliance with due process and the law of the land.

In *Sheets*, the plaintiffs' land was included on two recorded plats and no one ever possessed the platted land. The platted streets were never built and were unnecessary for ingress and egress to lots sold within the parcel. In 1939, the plaintiffs withdrew the land dedicated for streets from public use pursuant to a newly enacted statute which created a presumption of revocation of a dedication of streets by plat if the streets were not opened for twenty years. The defendants, who wanted to purchase the land, challenged the constitutionality of the statute on due process grounds, arguing that purchasers of lots within the plats were deprived of their vested rights to enforce the easements shown on the plats. The Court held that no vested property right was destroyed by the statute, but merely that the remedy by which those rights could be enforced had changed. The Court further held that the grantees of deeds in which references to maps were made had constructive notice of and a reasonable time in which to challenge the statute. *Id.* at 39-40, 6 S.E.2d at 821.

We find that *Sheets* is distinguishable and inapplicable to the facts in this case. First, *Sheets* only applies where dedicated easements are revoked before they are accepted and used. The statute in *Sheets* provided that the land would be conclusively abandoned by the public if it "shall not have been actually opened and used by the public within twenty years from and after the dedication thereof." *Id.* at 36, 6 S.E.2d at 819. Here by contrast, there has been no allegation that defendants abandoned the property. In fact, defendants have been in actual possession and enjoyment of the land. Moreover, *Sheets* only affects the status of easements in a platted subdivision. It does not affect the title to the underlying fee as the statute in this case purports to do.

Plaintiff-appellants also argue that *Texaco, Inc. v. Short*, 454 U.S. 516, 70 L. Ed. 2d 738 (1982), is controlling. That case, like *Sheets*, involved non-possessory property interests. In *Texaco*, a divided United States Supreme Court determined that an Indiana statute, providing for lapse of subsurface mineral rights after twenty years of nonuse, was constitutional. The statute contained a two-year grace period after its enactment to prevent mineral interests subject to lapse from being extinguished. In addition, the statute required notice prior to divestment to owners of ten or more interests. *Id.*

*Texaco* is distinguishable from the instant case. The Supreme Court in *Texaco* held that the statute fulfilled due process require-

**McDONALD'S CORP. v. DWYER**

[338 N.C. 445 (1994)]

ments because "[i]t is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right . . . ." *Id.* at 530, 70 L. Ed. 2d at 752. Unlike *Texaco*, here it is only the State's action that causes the lapse. No neglect, failure to use, or abandonment is attributable to defendants. Prior to and after N.C.G.S. § 1-44.2 was enacted, defendants and their predecessors paid for the property, took record title, paid property taxes, maintained and improved the property, operated a business on the property, and successfully defended earlier challenges to their title.

In this case, the statute requires defendants to bring suit within one year or forfeit property to which they have record title and of which they are in open possession. "The right to commence and prosecute an action may be lost by delay, but the right to defend against a suit for the possession of property is never outlawed. The limitation law may, in a possessory action, deprive a suitor of his sword, but of his shield never." *Pinkham v. Pinkham*, 61 Neb. 336, 338, 85 N.W. 285, 285 (1901). Therefore, we conclude that the first sentence of subsection (b) of North Carolina General Statute section 1-44.2 is unconstitutional because it does not provide sufficient notice, an opportunity to be heard, and just compensation before divesting owners of a valuable property interest. The remaining portions of N.C.G.S. § 1-44.2 are not challenged in this case and remain in full force and effect.

For the reasons stated herein, the decision of the Court of Appeals, which reversed summary judgment for plaintiffs, is affirmed.

AFFIRMED.

Chief Justice Exum dissenting.

The majority interprets N.C.G.S. § 1-44.2 as creating a conclusive presumption of title in the land underlying a railroad easement after the lapse of the statutory one-year period and automatically transferring title from whoever might own the property to the adjoining landowner. I do not so interpret the statute and am of the view that the majority reads more into the statute than the legislature intended.

In the first place, the statute clearly provides that the presumption which it establishes is not conclusive but "is rebuttable by showing that a party has good and valid title to the land." Second, by the statute's clear language, only those who claim ownership contrary to the presumption must bring an action to establish ownership within

McDONALD'S CORP. v. DWYER

[338 N.C. 445 (1994)]

the one-year statutory period. Persons claiming ownership in accordance with the presumption are not so limited in the time within which they may bring their claim.

The statute, in my view, operates as follows: When a railroad abandons its easement, the statute establishes a rebuttable presumption that title to the land underlying the easement resides in the owner of land adjacent to the easement, and the title extends to the centerline of the abandoned easement. One claiming ownership contrary to this presumption has the statutory period of one year to bring an action to establish ownership. The presumption operates against such a claimant, but the claimant may rebut the presumption by showing "good and valid title to the land." Presumably this means title which is superior to that the adjoining landowner would have but for the presumption. If such a claim of superior title is not brought within the statutory period, it is procedurally barred and may not be thereafter asserted against the adjacent owner, either offensively or defensively. The title of the adjacent landowner is then secure and that of the challenging claimant lost not because the statutory presumption is conclusive or because title is transferred but because the statutory period of limitations for challenging the adjacent landown-. er's title has expired. The statute does not abrogate vested rights or transfer title from one person to another. It merely establishes the procedure by which title under the limited circumstances defined by the statute must be claimed. Failure to claim title in accordance with this procedure bars the right to claim title thereafter.

As applied to the case before us, the statute works as follows: Plaintiff McDonald's Corporation (McDonald's) is claiming ownership to the land underlying the abandoned easement in accord with the statutory presumption. McDonald's is entitled to the benefit of the presumption. Not having challenged, or sought to rebut, this presumption by a claim filed within the one-year statutory period of limitations, defendants are barred from doing so now. Defendants are not barred because the statutory presumption is conclusive or because the statute transfers title from them to McDonald's. Whether, leaving aside the statutory presumption, they have better title than McDonald's, has never been determined in a way which binds McDonald's. Defendants are barred from *claiming* they have title superior to McDonald's because they "slept on their rights" and did not assert their claims against McDonald's within the time prescribed by the statute.

## McDONALD'S CORP. v. DWYER

[338 N.C. 445 (1994)]

The majority gets off track in this case by assuming that but for the statutory presumption defendants have record title to the property superior to that of McDonald's. The majority states, "Plaintiff does not contend that it has record title to the property at issue." This, I believe, is not the case. Both McDonald's and defendants claim to have superior record title. According to the forecast of evidence at the summary judgment hearing, the property was at one time owned by the Pepsi Cola Company (Pepsi). Pepsi filed bankruptcy in 1923 at which time Craven Holding Corporation (Craven) was incorporated in Virginia for the purpose of holding and making disposition of property owned by Pepsi. At this time the railroad had an active railroad easement over the property. Craven conveyed the property in question in 1923 and dissolved in 1931. McDonald's claims record title through mesne conveyances from Craven.[1] Defendants claim record title through quitclaim deeds from the heirs of deceased shareholders of Craven."[2]

Surely, in the interest of fairly settling titles, the constitution permits the state to establish a reasonable time within which one who claims title to land underlying an abandoned railroad easement must assert the claim against one who owns the land adjoining the easement or otherwise lose the right to do so. One year for the assertion of such claims is a reasonable time. The one-year period of limitations being reasonable, I see no constitutional infirmity in the statute.

My position is supported by *Sheets v. Walsh*, 217 N.C. 32, 34, 6 S.E.2d 817 (1940) and *Texaco v. Short*, 454 U.S. 516, 70 L..Ed. 2d 738 (1982).

In *Sheets*, an action seeking specific performance of a contract to convey realty, the plaintiff promisee had record title to certain prop-

---

1. McDonald's states in its brief, "Plaintiff owns the property at issue. There is no evidence that Craven intended to retain ownership of the fee underneath the railroad easement when it conveyed all of the property adjacent to the railroad. . . . Plaintiff is the successor to the adjacent landowner to whom Craven conveyed the property."

2. Defendants claim that the description of the property in McDonald's record title does not include the property underlying the easement and that this issue was settled in *Matter of Craven Holding Corporation*, No. 88CVS713, Superior Court, Craven County, by order dated 3 November 1989, from which no appeal was taken. I do not read the order as settling this issue. The order simply extinguishes Craven's interest in the property and concludes that this interest, whatever it was, had been transferred to defendants successor in title. In any event, to the extent this order might purport to resolve the issue of record title as between defendants and McDonald's, McDonald's is not bound by the order since it was not a party to the litigation.

erty, portions of which had previously been dedicated for public use as roads. The dedicated land had not, however, been developed as roads for more than twenty years and no one had brought suit to enforce any easement rights. Plaintiff asserted that it had ownership of the land under the following statutory provision:

> [E]very strip, piece, or parcel of land which shall have been at any time dedicated to public use . . . which shall not have been actually opened and used by the public within twenty years from and after the dedication thereof, shall be thereby conclusively presumed to have been abandoned by the public for the purposes for which same shall have been dedicated; and no person shall have any right, or cause of action thereafter, to enforce any public or private easement therein, unless such right shall have been asserted within two years from and after the passage of this act.

*Id.* at 36, 6 S.E.2d at 819. Defendant promisor, seeking to avoid the contract on the ground plaintiff did not have good title, contended this statute was not effective in that it constituted an unconstitutional taking since "the dedicators, predecessors in title of the plaintiffs, sold and conveyed lots to others by reference to the maps filed and recorded by them, the grantees in the deeds for such lots, and those claiming under them, were thereby vested with easements over all the streets shown on said maps." *Id.* at 38-39, 6 S.E.2d at 821.

The plaintiff and defendant in *Sheets* took positions comparable to those taken by plaintiff McDonald's and defendants here. The statute in *Sheets*, just as the statute here, required those seeking to claim their easement rights do so within two years or forever lose their right to make the claim. Concluding that the statute was constitutional, the Court reasoned:

> Any rights to enforce any easements which the grantees in the deeds made with reference to the maps, and of those claiming under them, may have had was clearly preserved for two years after its passage by the act itself. No vested right was destroyed by the act, only the remedy by which such rights might be enforced was changed, and when this was done these grantees, and those claiming under them, were left with a remedy reasonably adequate to afford relief, namely, two years after the passage of the act in which to assert their rights.

*Id.* at 39, 6 S.E.2d at 821. The Court found this result fair since "[t]he grantees . . . were fixed by law with notice of the statutes, and it was

incumbent upon them within the two years allowed by the statute (a reasonable time) to take themselves out of the bar put upon them by asserting their right of easements over the streets involved." *Id.* at 39-40, 6 S.E.2d at 821.

The majority attempts to distinguish *Sheets* on the basis that it involved land which was not used by the parties asserting title contrary to the statutory presumption. *Sheets,* however, was not decided upon whether these parties possessed or used the land, but upon the fact that they were by law on notice of their statutory duty to assert their rights within a reasonable time. I think *Sheets* controls the instant case.

*Texaco* likewise supports the constitutionality of our statute. In *Texaco* the Supreme Court upheld an Indiana statute barring mineral rights claims which were not asserted within a certain statutory period. The statute provided that a severed mineral interest which is not used for twenty years reverts to the current surface owner of the property unless the mineral owner filed a claim to his rights within two years. *Id.* at 518, 538, 70 L. Ed. at 743-44, 756. Not having filed its claim within the statutory period, the mineral rights claimant lost its right to make the claim. The Supreme Court found no constitutional infirmity in the procedural bar of the statute.

The majority attempts to distinguish *Texaco* on the ground it also involved rights which were unused. Nowhere in *Texaco,* however, is there an indication that the decision was based upon the mineral rights claimant's failure to use the right in question. The Court's decision was instead based on the principle that "persons owning property within a State are charged with knowledge of relevant statutory provisions affecting the control or disposition of such property." *Id.* at 532, 70 L. Ed. 2d at 752. The Court concluded that the constitution did not require more notice than that provided by the statute. *Id.* at 537, 70 L. Ed. 2d at 756.

Other states have upheld similar statutes which require persons to assert their rights within certain time periods or else forsake them. In *Presbytery of Southeast Iowa v. Harris,* 226 N.W.2d 232, 235, *cert. denied,* 423 U.S. 830, 46 L. Ed. 2d 48 (1975), for example, the Supreme Court of Iowa faced a statute which provided that those with reversionary interests in land who did not file a claim for that interest within the latter of twenty years of the deed creating that interest or one year after enactment of the statute would be barred from maintaining an action to claim their interest. The Court upheld the statute, rea-

soning that the statute "does not abolish or alter any vested right. Rather, it modifies the procedure for effectuation of the remedy by conditionally limiting the time for enforcement of the right." *Id.* at 242. The Court also found that the statute itself provided .adequate notice of the time limitation for filing claims. *Id.* The Court reached its conclusions after examining several cases from other jurisdictions and "the numerous commentators who persuasively argue that statutes premised on the theory the legislature may require periodic filing in order to preserve rights do not run afoul of constitutional limitations." *Id.* at 241.

The majority relies on *University v. North Carolina Railroad Company,* 76 N.C 103 (1877). This case is readily distinguishable. The University sued the railroad claiming it was entitled to certain unpaid stock dividends still held by the railroad. The statute under which the University claimed provided that declared stock dividends which were unclaimed for five years shall be paid by the issuing corporation to the University. The question in the case, as stated by the Court, was "whether the provisions of the Act are warranted by Art. IX, § 6, of the Constitution . . . ." *Id.* at 105. The constitutional provision in question provided, in pertinent part, "that all . . . unclaimed dividends, or distributive shares of the estates of deceased persons, shall be apportioned to the use of the University." The Court held that this constitutional provision was directed to the estates of deceased persons and did not authorize the legislature to transfer unclaimed dividends of living persons from the issuing corporation to the University. The first point is that this case involved stock dividends, not real property. Second, the dispute was not between the shareholder and the University; it was between the University and the issuing corporation. Third, the case involved an attempt by the plaintiff University to have personal property, the entitlement to stock dividends, transferred from the shareholders to it by the issuing corporation. Since the case did not involve shareholders who themselves were trying to assert their rights, no issue as to whether they could be procedurally barred from doing so arose. The Court noted this, essentially distinguishing the issue in that case from the issue now before us, saying:

> The counsel for the plaintiff endeavored to support their case, by drawing an analogy between the operation of the statute of limitations and the Act under which they claim. The analogy fails them. The statute of limitations bars the remedy only, and the debtor retains the possession of his property. But the Act under review, not only bars the creditor of his right of recovery,

but takes from him his property, transfers it to another and enables that other to recover and own it. The creditor not only loses his property, but by the magic of this Act and without consideration received, it is vested absolutely in another—it matters not whether that other is the State or its appointee.

*Id.* at 107.

As I have tried to demonstrate, the statute under consideration here does not transfer property from one party to another. The question of which party has better title is not reached. The statute simply creates a procedural bar to a claim of title contrary to the statutory presumption.

The trial court properly entered summary judgment for plaintiffs. I vote, therefore, to reverse the Court of Appeals, which reversed the trial court, and to reinstate the judgment of the trial court.

Justice Meyer joins in this dissenting opinion.