***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and having reviewed the competent evidence of record, the Full Commission hereby modifies in part and reverses in part the Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the Deputy Commissioner hearing and following in a Pre-Trial Agreement admitted into evidence by the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On 4 August 1994, an employment relationship existed between plaintiff-employee (hereinafter "decedent") and defendant-employer.
3. On 4 August 1994, Michigan Mutual Insurance Company was the carrier at risk.
4. Decedent's average weekly wage on 4 August 1994 was $369.53, which yields a compensation rate of $246.37 per week, based upon the Form 21.
5. On 4 August 1994, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer.
6. Defendants paid temporary total disability benefits at the compensation rate of $246.37 per week pursuant to a Form 21 Agreement between the parties, approved by the Commission on 20 October 1994.
7. Decedent's medical records and rehabilitation reports were admitted into evidence as Stipulated Exhibit #2.
The following Industrial Commission forms were admitted into evidence: Forms 21, 42, 22, 19 and 33.
Plaintiff became totally disabled on 4 August 1994.
 *********** EVIDENTIARY RULING
Defendants have filed two motions with the Full Commission to receive and hear additional evidence. The Full Commission notes that the Pre-Trial Agreement entered into by the parties includes two interlineated issues which were added by plaintiff at the Deputy Commissioner hearing. Defendants objected to these issues at the Deputy Commissioner hearing contending that plaintiff failed to file a Form 33, 33R, or other timely document to place them on notice that unpaid medical expenses were at issue. Defendants filed a Form 33 requesting a hearing to have decedent determined to be totally and permanently disabled. Plaintiff did not file a Form 33 and did not file a Form 33R. Defendants' motions to receive additional evidence include two affidavits from Willie Hyland and correspondence between defendant-carrier and Winston-Salem Rehabilitation and Healthcare Center which indicate that the carrier had previously paid the sums in dispute, reissued payment based on the provider's indication that it had not received the payment, and that the healthcare provider and carrier have amicably resolved the issue of payment for medical services provided to decedent. Plaintiff filed a response to defendants' motion and objects to the admission of this evidence. In addition, plaintiff has filed a conditional motion for the Commission to consider additional evidence, including affidavits (with attachments) by Linda Fisher and Tonya P. Smith from Winston-Salem Rehabilitation and Healthcare Center.
Having considered the total circumstances and with due consideration to the principles of due process, the Full Commission grants defendants' motion and permits the admission of Mr. Hyland's affidavits and the accompanying correspondence. Due process requires notice of the issues and the opportunity to be heard. See, McDonalds Corp. v. Dyer,338 N.C. 445, 450 S.E.2d 888 (1994); Woody v. Thomasville Upholstery,146 N.C. App. 187, 552 S.E.2d 202 (2001), reversed on additional issues,355 N.C. 483, 562 S.E.2d 422 (2002); Goff v. Foster Forbes Glass,140 N.C. App. 130, 535 S.E.2d 602 (2000); Article I, § 17 North Carolina Constitution. Because plaintiff did not timely file a Form 33, a Form 33R, or otherwise advise defendants that unpaid medical bills were in dispute, and plaintiff's claim is primarily based on hearsay testimony of Karen Morton, R.N., due process requires that defendants either be permitted to present additional evidence relevant to this issue or that this issue be remanded for further proceedings. Consistent with this ruling, the Full Commission also admits the affidavits and attachments from Linda Fisher and Tonya P. Smith conditionally filed by plaintiff. The Full Commission finds that under the circumstances of this case a remand is not necessary and that the issue can be resolved with the admission of the additional evidence. See, Cummings v. BCCI Const.Enterprises, 149 N.C. App. 180, 560 S.E.2d 369 (2002).
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. On 4 August 1994, Worth Apple (decedent) was a seventy-seven year old male employed by defendant-employer as a courier. On that date, decedent sustained a compensable injury when assailants struck him in the head with a sledge hammer.
2. As a result of his compensable injury, decedent received treatment at Forsyth Memorial Hospital. Decedent originally was in grave condition and near death. A CT scan revealed a small left subdural hematoma with minimal shift and contusions in both the left occipital area and right frontal area. Decedent's left ear was almost totally removed. The diagnosis was head trauma, skull fracture, hematoma, cerebral contusions and left ear laceration.
3. Decedent remained at Forsyth Memorial Hospital for approximately five months. During this time, he had a tracheotomy and percutaneous feeding tube placement. Decedent's condition stabilized to the extent he could be relocated to Thoms Rehabilitative Hospital.
4. Decedent arrived at Thoms Rehabilitative Hospital approximately 1 March 1995. On 9 March 1995, decedent received a ventriculoperitoneal (VP) shunt as treatment for post-traumatic hydrocephalus. After placement of the VP shunt, decedent was more alert and spoke two words to his wife, "Oh, me." These were decedent's first words since the 4 August 1994 compensable injury by accident. However, around 14 March 1995 decedent developed nausea, vomiting, 103° temperature and was transferred to Memorial Mission Hospital with a suspected shunt infection.
5. At Memorial Mission Hospital, decedent was treated with antibiotics for aspiration pneumonia, urinary tract infection, meningitis, shunt infection and respiratory infection. On 17 March 1995 his VP shunt was removed.
6. Following a course of antibiotics, decedent's physicians at Memorial Mission Hospital determined to replace the VP shunt due to decedent's prior mental status improvement after the first shunt. On 29 March 1995 physicians placed another VP shunt. However, following this procedure, decedent did not display any substantial improvement in his mental state or functional ability.
7. On 3 April 1995, decedent was discharged back to Thoms Rehabilitative Hospital. At the time of discharge, he could open his eyes to touch and a nearby voice and move his eyes but it was not clear if he was able to track objects. Decedent moved his arms and hands in a purposeful manner grabbing objects nearby and could intermittently squeeze and unsqueeze his hand on command. Decedent was unable to care for himself in any way and required constant attention, including the need for suctioning secretions through his trachea.
8. Decedent was discharged from Thoms Rehabilitative Hospital to Winston-Salem Rehabilitation and Healthcare Center (hereinafter "W-S Rehab" or "facility") on 31 August 1995. At that time it was agreed at a meeting of various interested parties, including the family, the carrier-defendant, and the healthcare facility, that in view of the seriousness of his condition, decedent would be provided twenty-four-hour private duty care by certified nursing assistants (CNAs). The CNAs were employed and provided in addition to the regular nursing staff supplied by W-S Rehab. Defendants did not pay the CNAs directly, but compensated W-S Rehab for the additional staff specifically employed for decedent.
9. From the time of his admission to W-S Rehab until his death on 14 January 2001, decedent was in a persistent vegetative state.
10. Certified nursing assistants were provided to watch decedent for, among other reasons, the risk of aspiration problems which had occurred in the past. Without the aspiration of secretions, decedent was at an increased risk of developing aspiration pneumonia, additional hospitalization and even death. The CNAs, however, were not qualified to perform the aspirations, but could only assist by notifying the qualified nursing staff at the W-S Rehab that decedent might benefit from aspirations.
11. Sometime in 1998, defendant-carrier questioned the expense of decedent's care at W-S Rehab and sought to renegotiate the rate paid for this care. Part of the issue appears to include whether the CNAs provided to decedent were needed in addition to the qualified nursing staff routinely provided and available at W-S Rehab. Related to this issue was the concern that there was no physician order for the CNAs that were provided in addition to the facility nurses, although it appears that all parties agreed to the addition of the CNAs in a 1995 life care plan meeting. The record includes testimony from Karen Morton, R.N., decedent's care plan director at W-S Rehab, and correspondence to the effect that the carrier and W-S Rehab were seeking to renegotiate the fees paid for the care of decedent.
12. Plaintiff asserts to the Commission, and the Deputy Commissioner below found, that defendants failed to pay W-S Rehab approximately $160,000 that is owed for necessary services provided to decedent, including for CNA services that were provided before this service was terminated. Defendants complain that this issue was not properly before the Commission, and that they have been prejudiced with the surprised joinder of the issue and the inability to depose Dr. Story and produce other witnesses to address the issue of whether reasonable and necessary medical services were provided and properly paid.
13. The only medical witness to testify concerning the termination of the CNA services and failure to pay for proper medical care at W-S Rehab was Karen Morton, a registered nurse from W-S Rehab. Ms. Morton, however, did not have first hand knowledge of the negotiations between the carrier and W-S Rehab and did not know the circumstances concerning the change in decedent's care at that facility. Ms. Morton explained that in circumstances with patients like decedent it was customary for the facility and the paying party to negotiate the rate of reimbursement for the services. However, Ms. Morton was not handling decedent's case in 1998 and did not know the circumstances of the negotiations for his care, other than rumors that she had heard. She was aware that as a result of the negotiations that the CNA services were suspended and that decedent was no longer provided these services and that he no longer had anyone to watch him one-on-one, 24 hours per day. Ms. Morton did not know why the change in services was made or the circumstances under which it occurred. Ms. Morton explained, however, that their facility had other residents that required the same amount and type of care as decedent and that these other patients did not have 24 hour CNAs in their rooms. Ms. Morton opined that the CNAs were not necessary and that W-S Rehab could and did provide its residents with the required care that they deserved without hiring additional, outside CNAs. Ms. Morton did not know why the additional CNAs were provided to decedent, or why their services were necessary, particularly since the CNAs could not provide aspiration services to decedent. According to Ms. Morton, decedent was not deprived of necessary care by the removal of the CNAs. Moreover, the evidence from Ms. Morton, which is accepted as competent by the Full Commission, is that W-S Rehab did not deprive decedent of necessary medical services during the period when defendants were negotiating the amount to be paid for the facility's services.
14. Ms. Morton also testified that it was her understanding that there continued to be a dispute concerning the payment for past services and that defendant-carrier was delinquent in past payments to W-S Rehab for services provided in 1998. She testified that she was told that the carrier was delinquent "[a]round a hundred and sixty thousand dollars." Ms. Morton was quite clear that she did not have personal knowledge of the facts and that she only was relating what she had "been told."
15. By affidavit, Willie Hyland, a Senior Claims Representative with Amerisure Insurance Company, stated that he had been involved in negotiations on behalf of defendant-carrier with W-S Rehab concerning the medical care provided to decedent. Mr. Hyland indicated that he was involved in negotiations concerning the appropriate sums to pay the healthcare provider in June, July, August, September and October 1998 and that it was agreed that an additional $50,000 would be paid for the facility's services. Mr. Hyland indicated that a check in this amount was sent to W-S Rehab and he provided a letter dated December 18, 1998, remitting the $50,000 payment. Mr. Hyland's affidavit and attachments indicate that W-S Rehab did not receive the $50,000 payment and that another check was issued for this amount. The record also contains a 25 June 2001 letter from W-S Rehab which acknowledges receipt of the $50,000 check as "payment in full" for the period for which payment was not previously received.
16. By affidavit, Linda Fisher, with the parent company for W-S Rehab, contended that defendants have taken the correspondence between the carrier and their facility out of context. Ms. Fisher stated that their facility wrote off, as an accounting decision, approximately $206,000 in unpaid medical services provided to decedent because it did not appear that decedent or his estate would be able to satisfy this debt. By affidavit Tonya P. Smith, the Business Manager for W-S Rehab, testified that when defendants paid, and W-S Rehab accepted, the $50,000 payment as "payment in full," the facility was not aware that there was a Commission order (the 19 April 2001 Opinion and Award of Deputy Commissioner Stephenson which is modified by this Opinion and Award) that defendants should pay the facility an additional $160,000.
17. Mrs. Apple testified that she believed that decedent received better care when the CNAs were present. She stated that she believed that the CNAs were stopped because Dr. Story did not believe that they were necessary. Although Mrs. Apple expressed her belief that her husband's condition was worse after removal of the CNAs, her testimony was not consistent with the medical records of Dr. Story and the testimony of Ms. Morton. The Full Commission accepts the medical judgments of Ms. Morton and Dr. Story over the lay opinion of Mrs. Apple as to whether CNAs were necessary medical care for decedent.
18. Based on the greater weight of the competent evidence, the Full Commission finds that plaintiff did not require 24 hour CNAs in addition to the nursing services provided by W-S Rehab. The Commission accepts as competent the testimony of Karen Morton, RN, that CNAs were not normally provided to patients who required similar care as decedent and that
19. W-S Rehab was able to, and did, provide the care that he deserved without the additional CNAs. The greater weight of the competent evidence does not support plaintiff's assertion that defendants improperly limited decedent's entitlement to medical or attendant care. The evidence is that decedent received appropriate care at W-S Rehab and that the additional CNAs were not necessary. The greater weight of the competent evidence further provides that defendants and W-S Rehab in 1998 negotiated the reimbursement for services provided by W-S Rehab to decedent and reached agreement that defendants would pay the facility an additional $50,000 for care given between June and October 1998. Although the $50,000 payment was not actually received by the facility until 2001, the evidence establishes that defendants and the facility reached an accord and satisfaction concerning the disputed debt which had not been repudiated prior to acceptance of the $50,000 payment in full satisfaction of the disputed debt. The testimony of Karen Morton, RN, is not competent evidence concerning the payment for services provided to decedent by W-S Rehab. Ms. Morton clearly does not have personal knowledge of the information which plaintiff seeks to rely upon and on numerous occasions in her testimony stated that she did not know: "I don't really know what happened during that period of time. I've heard rumors but, I mean, I don't know for sure." And, her testimony that the facility was owed "around" $160,000 was based on what she had "been told." In contrast to Ms. Morton's hearsay statements, Mr. Hyland's affidavit indicates that he has personal knowledge and was personally involved in the negotiation and payment for the services provided to decedent by W-S Rehab. The Commission finds that defendants and W-S Rehab reached an agreement that defendants would pay the facility an additional $50,000, that this sum was initially paid by defendants in December 1998, and that defendants reissued the $50,000 payment and W-S Rehab accepted this payment as "payment in full" after it was discovered that the facility had not deposited the prior payment. The subsequent affidavits of Ms. Smith and Ms. Farmer do not change these facts; rather, these documents suggest that the facility would like to back out of the agreement that it negotiated and accepted based on the findings of Deputy Commissioner Stephenson which are not supported by competent evidence and are rejected by the Commission in this Opinion. Ms. Farmer and Ms. Smith's reliance on Deputy Commissioner Stephenson's Opinion and Award is misplaced because the Deputy's opinion is not based upon competent evidence of the amount owed for the facility's services. Plaintiff and W-S Rehab did not offer evidence to establish that defendants owed (as opposed to were billed) more than the $50,000 that was agreed upon for the services provided to decedent.
The greater weight of the competent evidence does not establish that defendants unreasonably failed or refused to pay for the necessary medical services owed to decedent. Further, plaintiff has failed to establish that the delay in payment was due to unfounded or stubborn litigiousness by defendants.
20. Defendants requested a determination that decedent was permanently and totally disabled as of 4 August 1994, the date of the compensable injury. Although decedent was indeed unable to work or earn wages after that date, a final determination of permanent and total disability would have been premature prior to reaching maximum medical improvement.
21. Decedent's life-threatening condition stabilized during his initial stay at Forsyth Memorial Hospital in the months following his injury. Additionally, decedent had a period of time when he responded more fully and communicated with his wife while at Thoms Rehabilitative Hospital. Decedent's condition declined before 14 March 1995 but after 9 March 1995. Following this period, decedent was unable to reach the same level of responsiveness and remained essentially in a vegetative state while at W-S Rehab.
22. The greater weight of the evidence shows that decedent reached maximum medical improvement between approximately 10 March 1995 and 13 March 1995. At that time decedent was permanently and totally disabled.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 4 August 1994, decedent sustained a compensable injury arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As a result of this compensable injury, decedent reached maximum medical improvement approximately 10 March 1995 to 13 March 1995 and was permanently and totally disabled from that time period until the date of his death on 14 January 2001. N.C. Gen. Stat. § 97-29.
3. As a result of decedent's compensable injury, decedent was entitled to have defendants provide all necessary medical treatment arising from his compensable injury to the extent it tended to effect a cure, give relief or lessen decedent's disability. N.C. Gen. Stat. § 97-25. Plaintiff failed to establish that the certified nursing assistants (CNAs) were necessary after their use was suspended in 1998, or that defendants have failed to pay the agreed reimbursement for the reasonable services provided by W-S Rehab.
4. The healthcare provider is estopped to request further compensation after accepting the $50,000 payment as a full accord and satisfaction of the claim or potential claim for unpaid medical services. Accord and satisfaction is an agreement between parties in which one party undertakes to perform or give and the other party agrees to accept, in satisfaction of a claim, the execution and performance of that agreement. Zanone v. RJR Nabisco, 120 N.C. App. 768, 463 S.E.2d 584
(1995). In this case, the greater weight of the evidence shows that defendant-carrier intended the $50,000 check to be full and final payment resolving the dispute between the parties. Given the language in W-S Rehab's acknowledgement of receipt of the check as "payment in full," W-S Rehab understood defendant-carrier's intent to make final payment. See,Futtrelle v. Duke University, 127 N.C. App. 244, 488 S.E.2d 635 (1997). The cashing of the check by W-S Rehab ratified the agreement between the parties for payment of any disputed amounts.
5. Defendants had a reasonable basis for their prosecution or defense of this claim, and plaintiff is not entitled to recover additional attorney's fees. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
Defendants shall pay, if not already paid, indemnity benefits in the amount of $246.37 per week from 4 August 1994 through 14 January 2001. If any of these benefits have not been paid, they have accrued and shall be paid in a lump sum.
Plaintiff's counsel is entitled to 25% of the benefits provided in Award paragraph 1 above. These benefits, if any, have accrued and this sum shall be withheld and paid directly to counsel for plaintiff.
Defendants are not responsible for payment of any additional monies to W-S Rehab for the care of decedent from June through October 1998.
All costs shall be paid by defendants.
This the ___ day of November 2002.
 S/ ____________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ ____________________ RENEE C. RIGGSBEE COMMISSIONER
S/ ____________________ CHRISTOPHER SCOTT COMMISSIONER